## FORT WORTH STATE BANK v. IRVING.
### (No. 2546.)

(Court of Civil Appeals of Texas. Texarkana. May 11, 1922.)

**1. Husband and wife ⬤⟿169(1) — Wife may mortgage property belonging to separate estate.**

Under Rev. St. art. 4621, a wife may mortgage property belonging to her separate estate to secure a debt contracted by her.

**2. Husband and wife ⬤⟿27.1—Instrument reciting acceptance of given sum in full settlement of interest in community property passed title to wife.**

An instrument reciting the signer's acceptance of a given sum in full settlement of his interest in the community property of himself and wife, in view of their separation and divorce settlement, passed title to such property to his wife, if valid.

**3. Evidence ⬤⟿94—Burden of proof does not shift.**

While the weight of the evidence may shift according to the testimony adduced, the burden

of proof remains throughout the trial on the party having the affirmative of the issue.

**4. Trial ⬀234(7)—Instruction held erroneous as shifting burden of proving title in action for conversion of community property from plaintiff.**

In an action against a bank for conversion of alleged community property, a charge that the burden was on plaintiff to establish the allegations entitling him to recover, but that defendant must show that plaintiff's wife had separated or obtained a divorce from plaintiff, and had the right of control and disposition of the property, or that plaintiff had done acts which would reasonably lead a person of ordinary prudence to believe that such was the case, *held* erroneous as shifting the burden of proof from plaintiff.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Action by C. A. Irving against the Fort Worth State Bank. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Wm. J. Berne, of Fort Worth, for appellant.

Sam J. Hunter and Estes & Compton, all of Fort Worth, for appellee.

HODGES, J. The appellee, C. A. Irving, sued the appellant for the conversion of some diamonds and a list of household goods itemized and attached to his amended original petition. He alleged that the property belonged to the community estate of himself and wife, and that the appellant had taken possession and disposed of them under the provisions of a mortgage previously executed by his wife alone, without his knowledge or consent. He claims that the mortgage was invalid because the conditions did not exist which authorized the wife to assume the control and disposition of community property. The mortgage was attached as an exhibit to the amended petition. It purported to be a lien upon 44 bedroom sets and one parlor set then in storage in Fort Worth. It was executed to secure the payment of a promissory note made by Mrs. Irving, payable to the appellant, for the sum of $2,140, dated December 18, 1917, and due 90 days thereafter.

After a general denial, the appellant pleaded the existence of the debt and mortgage as its defense. It further alleged that the diamonds were delivered to it by Mrs. Irving as additional security for the loan made and in consideration of an extension of the time for the payment of the note. It was also alleged that at the time the mortgage was executed the property incumbered, as well as the diamonds, belonged to the separate estate of Mrs. Irving, and that she had a legal right to thus pledge them as security for the debt contracted.

In a general charge the court submitted the issue of ownership, and directed a verdict for the plaintiff if the jury believed the property converted belonged to the plaintiff, or to the community estate of himself and wife. The jury returned a verdict in favor of the plaintiff for damages in the sum of $4,350.

The evidence in which there is no apparent conflict shows that for several years prior to 1917 the appellee and his wife had been engaged in the business of conducting rooming houses and had accumulated a large amount of furniture used for that purpose. They also had on deposit with the appellant bank several hundred dollars in cash. About February 25, 1917, while they were conducting a rooming house in Fort Worth, Mrs. Irving employed attorneys to secure for her a divorce from her husband on the ground of cruel treatment. A separation, it seems, was then agreed upon between them, and the appellee executed the following instrument:

"I, C. A. Irving, hereby, in view of our separation and divorce settlement, accept one hundred dollars in full settlement of any and all interests to any and all community property, including bank account, and sign inclosed waiver waiving appearance in the divorce proceeding. This February 25, 1917.

"[Signed] C. A. Irving.

"[Signed] W. J. May.

"Dave T. Miller."

He also signed at the same time a waiver of service of citation in the divorce suit, and soon thereafter left Texas for some place in Oklahoma. The divorce suit was filed in a district court of Tarrant county. A few weeks later Mrs. Irving went to Oklahoma to visit her husband. A reconciliation took place, and they both returned to Fort Worth, where they continued to live together and conduct the rooming house business as before. In October, 1917, Irving enlisted in the army, and was absent from home for several months. He later returned on a furlough; and he and his wife went on a visit to Paducah, leaving their business in the hands of other parties. While they were absent their landlord undertook to dispossess them, and had their furniture and household goods removed and stored with a local storage company. On their return a storage receipt was issued and delivered to Mrs. Irving, and, according to her testimony, she then paid $80, the cost of two months' storage. Irving returned to the army. On December 18, 1917, presumably during his absence, Mrs. Irving determined to move to Tulsa, Okl., for the purpose of opening a rooming house at that place. She had on deposit with the appellant bank in her own name approximately $1,600. In order to secure additional funds, she applied to the appellant's officers for a loan of $2,000. Aft-

er some discussion regarding the security, she delivered to the appellant the storage receipt for the goods previously mentioned, and also executed the mortgage referred to, for the purpose of securing her note given for $2,140 due in 90 days from date.

The testimony is conflicting upon some of the material issues involved. Irving testified that when he executed the conveyance to his wife he was so drunk that he did not know what he was doing, and that he knew nothing of any contemplated divorce suit until some time thereafter. It is admitted, however, that he received the $100 mentioned as the consideration for the conveyance. Other testimony not disputed shows that $50 of that consideration was paid to him in money by his wife, and that she gave a check on the appellant bank for the remaining $50, which was cashed by her attorneys, and the money paid to Irving. The attorneys testified that when the check was presented to the appellant bank on the following day they were required to furnish evidence that Mrs. Irving had a right to check on that account; that in order to satisfy the bank of that right they produced a verified copy of the conveyance from Irving above quoted. They also testified that at the time this instrument was executed by Irving he was not drunk; that he was sober and in a condition to understand all that was being done.

[1] The controlling question in this controversy is who owned the property involved at the time it was mortgaged? If it belonged to the separate estate of Mrs. Irving, then she had a legal right to mortgage it for the debt she had contracted. Revised Civil Statutes, art. 4621. On the other hand, if it was at that time community property, it is apparently conceded that she had no such right; there being no evidence of the existence of those conditions which confer upon the wife the right to control and dispose of community property.

[2] The proof shows that, when originally acquired, the household goods were community property. They remained such, unless the conveyance executed by the appellee on the 25th day of February, 1917, had the legal effect of passing his title to his wife. That such was its purpose is manifest from the evidence of both Mrs. Irving and her attorneys; and that such would be the legal effect if the conveyance was valid cannot be denied. The validity of that instrument is assailed upon two grounds: (1) That Irving was drunk when he executed it; and (2) that the instrument was subsequently canceled by the parties.

Upon the issue of drunkenness the testimony was conflicting. As evidence of cancellation Mrs. Irving testified that, when she informed her husband on her visit to him in Oklahoma of what he had done in conveying the property to her, he expressed some surprise and asked her what she intended to do, and she replied, "What is mine is yours." Irving testifies to something similar.

[3, 4] In charging the jury upon the burden of proof the court gave the following:

"The burden is upon the plaintiff to establish by a preponderance of the evidence the allegations entitling him to recover herein, and the amount of damages, if any, which he has sustained. The burden, however, is upon the defendant, Fort Worth State Bank, to show by a preponderance of the evidence that the plaintiff, C. A. Irving and his wife, Evelyn Irving, had separated, and that she had the right of control, management, and disposition of the property in question, or that the plaintiff had done those acts which came to the knowledge of the officers of the bank which would reasonably lead or cause a person of ordinary prudence to believe that such separation had occurred, or that said Evelyn Irving at said time or times was, within the meaning of the law, a single woman—that is, had obtained a divorce from her husband, the plaintiff herein—and that it acted in good faith upon such knowledge or belief in lending to her any amount or amounts of money, and in accepting from her any mortgage or pledge upon the property in controversy."

The giving of that charge is assigned as error; the objection being that it was upon the weight of the evidence, in improperly shifting the burden of proof, as well as confusing. We are of the opinion that the objections should be sustained. The plaintiff, having alleged that the property belonged to the community estate, which was, in effect, a denial that it belonged to the separate estate of his wife, had the burden of proving his title. While the weight of the evidence may shift according to the testimony adduced, the burden remains throughout the trial upon the party having the affirmative of the issue involved. Clark v. Hills, 67 Tex. 141, 2 S. W. 360; Boswell v. Pannell, 107 Tex. 433, 180 S. W. 593. It was a part of the appellee's burden, in making out his case, to impeach the validity of the instrument by which he conveyed his community interest to his wife. It is true he may have made a prima facie case by showing how the property was originally acquired, but that did not relieve him of the burden of meeting and overcoming evidence tending to show that the title did not remain in the community. Appellant's denials put in issue the state of the title at the time the mortgage was executed, not its status prior to that time. The charge was improper and should not have been given.

The remaining assignments are overruled without discussion.

The judgment is reversed, and the cause remanded.