## DOWNS v. FARMERS' GRAIN & IMPLEMENT CO.

### No. 3552.

Court of Civil Appeals of Texas. Amarillo.
Feb. 18, 1931.

H. D. Bishop, of Austin, for plaintiff in error.

Hugh L. Umphres, of Amarillo, for defendant in error.

RANDOLPH, J.

This suit was filed in the district court of Armstrong county by Minnie L. Downs against the Nelson-Davis Grain Company and the Farmers' Grain & Implement Company to recover the sum of $1,113.75, damages for the conversion of certain crops. On trial of the case, Nelson-Davis Grain Company tendered into court certain moneys which had been in its possession, and the court thereupon dis-

posed of the case as to them, but submitted the case as between the plaintiff and the defendant Farmers' Grain & Implement Company to the jury upon special issues. On the jury's answers to the issues submitted, the court rendered judgment in favor of the defendant Farmers' Grain & Implement Company and against the plaintiff for the sum of $400. Also upon the question of the mortgage lien which the defendant Farmers' Grain & Implement Company had sought a foreclosure by cross-action, it appears that the parties herein had permitted the sale of the property covered by the mortgage, and that the proceeds thereof were deposited in the registry of the court; the court ordered the clerk of that court to apply to the judgment in favor of the Farmers' Grain & Implement Company a sufficient amount to pay same and all costs in the case, and, if there was any residue remaining, same should be paid to the plaintiff. Further, the court rendered judgment that the plaintiff take nothing against any of the parties defendant and that the defendant Farmers' Grain & Implement Company take nothing against its codefendant or plaintiff except as hereinabove stated. From this judgment the plaintiff has appealed.

The parties to this appeal have filed herein an agreed statement of facts, and also have filed, as a part of same, the following: "We agree that if as a matter of law the facts warranted the final judgment entered herein, then the evidence though conflicting was sufficient to support the findings, verdict and final judgment."

In other words, this agreement obviates the necessity of our passing upon the sufficiency of the evidence to support any issue which was submitted to the jury, and the only issue left for our determination is, Are the jury findings such as authorized the final judgment of the trial court, as a matter of law?

■ The plaintiff assigns as fundamental error the rendering of the trial court's judgment, for the reason that the evidence wholly negatives the finding of the jury that the plaintiff did not execute the note and mortgage sued on under duress and wholly negatives the finding of the jury that the plaintiff did not execute said note and mortgage because of having relied on some misrepresentations of the defendant concerning some material facts which they intended to and which did induce her to execute the same; the evidence showing that said note and mortgage were executed without consideration.

Avoiding any discussion of this assignment as being multifarious, we hold that the consideration of the question whether or not the evidence negatives such named findings is precluded by the agreement of counsel that the evidence is sufficient to support the jury's findings. To attempt to discuss this ques-

tion would be tantamount to inquiry into the sufficiency of the evidence to support the verdict, and the counsel have agreed that this shall not be done.

It appears from the record that A. H. Downs and Minnie L. Downs were husband and wife; that Mrs. Downs was the owner of a tract of land in her own separate right and estate; that she made arrangements with her husband as her tenant to plant crops upon this land, he to get two-thirds of the crop and she as landlord to get one-third thereof. The husband on the 4th of June, 1927, purchased from the Farmers' Grain & Implement Company a grain combine cutting and harvesting machine, executing four promissory notes of that date, payable to the defendant implement company, two of which notes were for the sum of $568 and $500, respectively, and payable on demand, and the other two notes were in the sum of $380 and $250, respectively, and payable on or before July 1, 1928, and also executed a chattel mortgage on said combine, and "my two-thirds interest in 100 acres of wheat now growing on my wife's place, Mrs. Minnie L. Downs, and being farmed by me and located about five miles west of Goodnight, Texas. * * * This mortgage to cover the crops raised for the years 1927 and 1928."

The husband of plaintiff used this combine in cutting and harvesting the crop, and also used it to cut and harvest several crops for the neighbors. About the 10th or 12th of July of the same year, the plaintiff's husband disappeared, leaving said combine on his wife's farm, and has never returned.

The plaintiff thereafter executed a note for $300 and a mortgage on the crop to be grown on the same land in the year 1928; the said land, as stated, being her separate property, which note and mortgage were executed by her in consideration of the Farmers' Grain & Implement Company releasing her husband and herself from any personal obligation on said notes and mortgage that he had theretofore executed and in consideration of the delivery of said combine to the implement company and the execution of a bill of sale to it. The mortgage note and contract executed by her were dated July 22, 1927, which was ten or fifteen days after her husband's disappearance and about one month and eighteen days after the date of the execution of the prior notes and mortgage by the husband. The plaintiff did not join her husband in the execution of the prior notes and mortgage, and he did not join her in the execution of the $300 note and mortgage, he having disappeared before that occurrence.

The above statement shows that the husband of the plaintiff had abandoned her prior to her executing the $300 note. The jury found that the husband, A. H. Downs, had permanently abandoned the plaintiff on July 22, 1927, prior to her signing the $300 note.

and mortgage; that, at the time she signed said note and mortgage, she was acting as a feme sole, that is, an unmarried woman; that she signed said $300 note and mortgage in renewal of the balance due on the four notes and mortgage to the defendant implement company; and further, the jury having found that she executed the $300 note and mortgage because she believed her husband had permanently abandoned her, it is immaterial that the jury also found that she believed he would probably return to her, and that said note and mortgage was not executed for the purpose of preserving her separate property also becomes immaterial.

The question, therefore, is, Did Mrs. Downs, whose husband had permanently abandoned her and who had incumbered her personal property by a note secured by a mortgage executed by her subsequent to such abandonment in renewal of a debt owed by her husband, did her separate property so incumbered become bound for the payment of such obligation?

It is apparent from the opinion of Chief Justice Phillips in the case of the Red River National Bank v. Ferguson, 109 Tex. 287, 206 S. W. 923, 925, that the Supreme Court intended to approve the decision of the holding that the wife incurred no personal liability in the signing of a note as surety for her husband, and that she could obligate her separate property as security for it. This is evident from the court's holding:

"Under article 1114 [Rev. St. 1911] the wife's authority, there conferred, to convey her real estate when joined by her husband in the conveyance, includes, necessarily, the lesser power to encumber it in the same manner. Accordingly, she may mortgage it to secure the husband's debts. Hollis v. Francois, 5 Tex. 199, 51 Am. Dec. 760; Wofford v. Unger, 55 Tex. 480; Kellett v. Trice, 95 Tex. 160, 66 S. W. 51. She incurs, thereby, no personal liability; her property merely stands in the relation of surety for the debt.

"The power heretofore possessed by the wife to mortgage her separate property for the debts of the husband was not impaired by this act. It remains with her as aforetime."

This being the binding effect of her act in pledging her separate property to secure the debt of her husband, when joined by him, in the execution of a mortgage upon her separate property, what is the legal status of a mortgage executed by her without his joinder and under the circumstances in this case?

The jury having found that Downs, the husband, had permanently abandoned the plaintiff, his wife, before she executed the mortgage in question herein, and that such mortgage was executed by her to secure a pre-existing debt of the husband, that she executed same as a feme sole and was transacting business as such, did her legal status at that time authorize her to bind her separate property by mortgage for the husband's pre-existing debt when he did not join her in the execution of same?

In the case of Crowder v. McLeod, 151 S. W. 1166, 1167, Chief Justice Conner, speaking for the Fort Worth Court of Civil Appeals, says: "While ordinarily under our statute a wife may not make contracts binding her separate property or the community property of herself and husband, save in certain cases not here pertinent, yet where, as here shown, she has been abandoned, she, in the nature of the situation, may act as a feme sole and pay community debts and convey community property either for that purpose or for the purpose of securing necessaries for herself and family. When so abandoned, we think her powers with reference to and in preservation of the community property and in the settlement of connubial partnership business is analogous to the powers of a surviving partner generally."

In the case of the Ft. Worth State Bank v. Irving, 241 S. W. 277, while separated from her husband and during pendency of a divorce suit, the wife executed a mortgage signing it alone, without the joinder of her husband, covering the property which the Court of Civil Appeals held to be her separate property, that court holding that, as it was her separate property, she had the legal right to mortgage it. The Commission of Appeals in 256 S. W. 584, affirmed the judgment of the Court of Civil Appeals in that case.

In the case at bar, the husband and wife had joined in the tenancy contract and agreed that the husband had a two-thirds interest in the crop and that the wife's part was one-third. Under the decision in the Irving Case, supra, if that one-third of the crop was the separate property of the wife, she had the right to mortgage it. If it was community property, acting as a feme sole, or a surviving partner, she had the right to mortgage it, in view of the husband's abandonment of her, to secure the payment of a community debt.

Finding no reversible error, we affirm the judgment of the trial court.