JEFF SLATOR v. JOHN G. NEAL.

(Case No. 5519.)

1. PURCHASER FOR VALUE.— One is in contemplation of law a purchaser for value if the consideration is paid at his request by a third party, who is his debtor.

2. CONVICTION — COMMUNITY PROPERTY.— The sentence of a husband to the penitentiary, and his confinement there, is equivalent to an abandonment of the wife, and authorizes her to manage and dispose of the common property, at least so far as to secure a support for herself and children.

ERROR from Llano. Tried below before the Hon. John C. Townes.

The opinion states the facts.

*W. W. Martin* and *Wa. H. Miller*, for plaintiff in error, cited: Wright *v.* Hays, 10 Tex., 130; Cheek *v.* Bellows, 17 Tex., 613.

*W. T. Dalrymple*, for defendant in error, on the question of innocent purchaser, cited: Sperlock *v.* Sullivan, 36 Tex., 511, and authorities cited; Case *v.* Jennings, 17 Tex., 673.

On abandonment, he cited: Carothers *v.* McNese, 43 Tex., 224; Cheek *v.* Bellows, 17 Tex., 617; Fullerton *v.* Doyle, 18 Tex., 13; Forbes *v.* Moore, 32 Tex., 199.

WATTS, J. COM. APP.— While the appellee was confined in the penitentiary under a conviction for a felony, his wife sold to the appellant between fifteen and twenty head of cattle, the community property of appellee and his wife. Having served some twenty-two months of his term, appellee was pardoned, returned home and instituted this suit to recover the cattle and their increase. While the pleadings are quite meager, still, from the findings of the court and the evidence adduced, it seems that the recovery was had upon the

ground that there was no necessity for the wife's making the sale; hence she had no authority to make it, and that she intended thereby to defraud the husband.

Among the findings of the court are the following:

"5th. That said sale was not made by her to procure necessities, nor in a *bona fide* effort to manage and control the said community estate of herself and said husband, but that the same was made with the intent to defeat the rights and interest of plaintiff in said property and defraud him thereof.

"6th. That the defendant had constructive notice of said intent and was not a purchaser for value."

As a conclusion of law the court found that, under the circumstances, the wife had the right to sell the community property, but only for the purpose of supplying herself and children with necessaries, or in the *bona fide* effort to manage and control the property for the best interest of herself and husband.

It appears that appellee was convicted and sentenced to a term of two years' confinement in the penitentiary about June, 1881, and the sale was made to appellant about April, 1882. From the evidence it appears that Mrs. Neal had secured loans of money both from Moss and Campbell, which amounted in the aggregate to $90. And she testified that she had borrowed this money to enable her to purchase necessary supplies for herself and children, and that she made the sale to appellant so as to pay these debts and purchase other necessaries for herself and children. And also that Campbell paid her the money for the cattle purchased by appellant.

It appears that at the time, Campbell owed the appellant $256, the value of the cattle, and when appellant made the purchase, Campbell settled the debt by paying Mrs. Neal the money for the cattle.

This seems to have been the first sale and delivery of the community property made by her, after the conviction of appellee.

Appellant testified that, at the time he bought the cattle, he understood Mrs. Neal was making the sale to raise money for the support of herself and children, and he knew of no other means by which she could support herself and children than by a sale of the cattle, and that, so far as he could know, she was in necessitous circumstances at the time.

There is no evidence in the record whatever tending to show any bad faith upon the part of appellant in the matter, nor is there any evidence tending to show any notice, either actual or constructive, upon his part, of any wrong or fraudulent intent of Mrs. Neal in

making the sale. And it may be assumed that the court intended, by "constructive notice," that the appellant was not a purchaser for value, as he did not himself pay the money to Mrs. Neal, and the payment to her by Campbell was only in the discharge of a debt due by him to appellant. In this view of the matter we are of the opinion the court below was in error. What difference could it make whether appellant collected the money from Campbell and paid it to her directly, or whether Campbell paid it for him? He parted with the consideration, for by the transaction his claim upon Campbell was discharged, and the money paid to Mrs. Neal for the cattle.

Now the fact that, subsequently to this sale, Mrs. Neal was guilty of indiscretions with Campbell, could not affect the good faith of appellant in making the purchase. It seems that up to and after the sale, she was residing upon the place provided by appellee, and to outward appearances seemed to be living as an honest, discreet wife. True, Campbell at the time was aiding her in the control and management of her affairs, but it was subsequent to the sale that he moved her to his own place, and there became over-zealous in looking after her welfare.

There is not anything in the record indicating any knowledge by appellant of bad faith in Mrs. Neal in reference to the sale, while there is evidence to the effect that the money paid for the cattle was used by her for the support of herself and children; there is no evidence tending to show the contrary.

This then leads to the material and decisive question in the case: Was Mrs. Neal, under the circumstances, authorized to sell the community property without the concurrence of the appellant?

Even at common law it was held that where the husband abandoned the wife and left the country, or where he was banished, even for a limited time, that the disabilities of coverture under which the wife labored were so far removed as to enable her to contract and be contracted with, to sue and be sued, and to acquire, hold and dispose of property. Gregory v. Paul, 15 Mass., 32, and authorities cited; Starrett v. Wynn, 17 S. & R., 132; Schouler on Domestic Relations, 295.

The leading case in this state is Wright v. Hays, 10 Tex., 130. There the husband, as it seems, with the consent of the wife, left her at home in charge of their property, and went to the Rio Grande, and there remained for about five years. There seems to have been no intention of permanently abandoning his wife, for she visited him once or twice while there. During the absence of

the husband the wife, by purchase, acquired title to a half league of land; and by deed of gift conveyed six hundred and forty acres of the land to Hays, her son by a former husband. Upon the return of the husband the suit was brought against Hays to recover the land, upon the ground that the wife had no authority to make the deed. But while the land was considered community property, still the court sustained the deed on the ground that the absence of the husband conferred upon the wife the right and authority to manage, control and dispose of the community property. And it was there held that, as to common property, the rights of the husband and wife are precisely equivalent to each other, with the exception that the statute confers upon the husband its management and control for the benefit of both.

It should be observed that in the case of Wright v. Hays the wife's power of disposition was not limited by her necessities; that was not a sale made for the purpose of enabling her to secure supplies or necessaries for herself and family, but was a gift to her child by a former husband.

Cheek v. Bellows, 17 Tex., 613, was where the husband and wife owned a hotel as common property. The husband being arrested for crime broke jail and made his escape. Soon thereafter the wife leased the hotel to Cheek for the term of one year, and before the expiration of the term Bellows returned and brought suit for the possession, upon the ground that the wife had no authority to make the lease. But the court held that, under the circumstances, she had the authority to make the lease, to secure a support for herself and children.

In Fullerton v. Doyle, 18 Tex., 13, where the husband abandoned the wife and went to California, the court sustained a conveyance made by the wife of community land; and it is there said: "The rights and powers of the wife arise from the fact of abandonment, and not the length of its continuance."

In Heidenheimer v. Thomas, 5 Texas Law Review, 205, the cases in which the question under consideration has been discussed are cited. From an examination of these cases it will be seen that the rule is well settled, that, when the husband abandons the wife and fails to provide for the family, this authorizes the wife to manage, control and dispose of the common property so as to secure a support for herself and children. And it seems from the cases of Wright v. Hays, and Fullerton v. Doyle, that where the facts exist which would authorize the wife to assume the management, control and disposition of the common property, she has the same un-

limited power in these particulars as would the husband if present and in control of the property. But however this may be, certainly the rule applied by the court below is so restrictive as to practically deny to the wife any authority to dispose of the common property. For who would purchase property from her if bad faith is to be imputed to him by reason of some secret intent entertained by her, or by reason of her subsequent misapplication of the purchase money?

The conviction, sentence and confinement of Neal in the penitentiary rendered it impossible for him to manage and control their common property, or to aid in supporting Mrs. Neal and her children. His condition as a convict, immured in the penitentiary for two years, a condition superinduced by his own voluntary act in violating the penal laws of the state, is certainly incompatible with the idea of his management and control of their community property. For all practical purposes, outside of the prison, the convict is *civiliter mortuus*.

By statute the sentence and confinement of appellee was ground for divorce by his wife, provided she rendered no aid in securing the conviction. It certainly is equivalent to, and should be considered such an abandonment of the wife, as would authorize her to manage, control and dispose of the common property in securing a support for herself and children.

Our conclusion is, that the judgment of the court below is against the evidence, and that it ought to be reversed, and the supreme court should have rendered the judgment that ought to have been rendered in the court below, viz.: That appellee Neal take nothing by his suit, and that the appellant Slator go hence without day and recover his costs.

REVERSED AND RENDERED.

[Opinion adopted May 26, 1885.]