# DECEMBER, 1918,

RED RIVER NATIONAL BANK v. J. E. FERGUSON ET AL.

No. 3042.   Decided December 2, 1918.

**1.—Married Woman—Surety for Husband.**

The Married Woman's Act of 1913 (Act of March 21, 1913, Laws, 33d Leg., p. 61), does not confer on a married woman the power to contract as. surety for her husband on a note not given for necessaries, and she is not bound thereby.   (Pp. 289-296.)

**2.—Same—Statutory Construction.**

It is assumed that the Legislature, if intending a radical change in the law, would seek to effect this by the use of language plain and certain, and not rest it only in deductions to be drawn from a caption, or in the inference of an emergency clause. It was not to be presumed that its expression would be found in doubtful phrase, or left to implication from a merely negative provision.   (Pp. 291, 292.)

**3.—Same.**

The history of the course of a bill into enactment as a statute and the purpose and effect of a clause therein as applied to the original language of the bill are here considered in determining the meaning and effect of such clause as applied to the bill as amended.   (Pp. 293, 294.)

**4.—Same—History of Act of 1913.**

No power to bind herself as surety on the note or obligation of her husband was conferred on the wife by the proviso to article 4624, Rev. Stats., as amended by the Married Woman's Act of 1913. This clause is purely restrictive and negative. Its presence in the Act is explained by the history of its enactment. As originally passed the article conferred full power to contract, including that to become surety. The proviso was a limitation on this power for the protection of the wife's property by requiring her husband's. concurrence in the contract, and had reference to contracts by the wife as surety for another than her husband. It still retained this meaning when,. the bill being recalled from the hands of the Governor, the article was amended by striking out the clause which gave her such power to contract, to limit. which it had been inserted.   (Pp. 293, 294.)

**5.—Statutory Construction—Expressio Unius.**

Article 4624, Rev. Stats., as amended by the Married Woman's Act of 1913, confers, by implication, a power in the wife, joined by her husband, to

become surety on the note of another. This, under application of the maxim expressio unius est exclusio alterius, negatives the idea that she could become surety for her husband. (P. 295.)

**6.—Married Woman—Contract for Protection of Separate Property.**

Attention is called to the fact that the amendment, by the Married Woman's Act of 1913, of article 4624, Rev. Stats., apparently by inadvertence, deprives married women of the necessary power, theretofore enjoyed, of making contracts essential to the protection of their separate property. (P. 295.)

Error to the Court of Civil Appeals for the Sixth District in an appeal from Red River County.

The Red River National Bank sued J. E. Ferguson as principal, and his wife and others as sureties, upon their note. It recovered against all the defendants except the wife, Bessie E. Ferguson, who had pleaded coverture. On appeal by the bank the judgment was affirmed, and appellant then obtained writ of error.

*J. R. Kennedy* and *Mahaffey, Kenney & Dalby,* for plaintiff in error.— A married woman may execute a note or be a joint maker of a note and her separate estate become bound and liable for the payment thereof, when she is joined by her husband or when she joins her husband in making the contract and in the execution of the note. Amended Acts of 33rd Legislature of the State of Texas, Regular Session, p. 61; Grossman v. Union Trust Co., 228 Fed., 610, C. C. A., 5th Dist.; Speer's Marital Rights, p. 197 et seq.; Simkins on Contract and Sales, p. 192 et seq.

*Burdett, Connor & Daily,* for defendants in error.—Appellee being a married woman at the time she signed the note sued on, her act in signing it was a nullity, and the note is void as to her, and no judgment should be rendered against her. Kavanaugh v. Brown, 1 Texas, 481; Cruger v. McCracken, 87 Texas, 585; Rev. Stats., arts. 4621 to 4625, inclusive; original arts. 4621 to 4625, inclusive (1911); Acts 33rd Leg. (1913), pp. 61 and 62, amending original arts. 4621, 4622 and 4624; State v. Connor, 86 Texas, 140; Farmer v. Shaw, 93 Texas, 438, 55 S. W., 1115; Galveston, H. & S. A. Ry. Co. v. Davidson, 93 S. W., 446; history of House bill No. 22 amending original arts. 4621, 4622 and 4624.

The Act of 1913 must be construed, we submit, as totally incapacitating the wife from becoming surety for the husband. In providing that the wife "shall never be . . . a surety on any bond or obligation of another without the joinder of her husband with her in making such contract," the evident purpose of the statute was to require, as a condition precedent to the wife's becoming surety at all, that she have the disinterested concurring judgment of her husband. This, obviously, she can not have if she become surety for her husband. Instead of having the protection of his disinterested concurrence she is rather acting in subjection to his antagonistic influence.

MR. CHIEF JUSTICE PHILLIPS delivered the opinion of the court.

It was sought in the trial court to charge Bessie E. Ferguson, the wife of J. E. Ferguson, as a signer upon a note given by her husband as principal, and others as his sureties. Her coverture was duly pleaded, and it was found by the court that the note was not given for necessaries for herself or children or for the benefit of her separate estate. This made her relation to the transaction simply that of a surety for her husband. Under the law of the State as it existed prior to the passage of what is known as the Married Woman's Act of 1913 [Act of March 21, 1913, Laws 33rd Leg., p. 61], she was clearly not liable. If she is liable at all, it is in virtue of that act, the transaction having occurred after its adoption. The effect of that Act is, therefore, the question in the case.

The caption of the Act is a very broad one. It indicates a law of marked variance from that heretofore prevailing in the State in respect to the wife's contracts, as well as in other particulars. It announces broadly, following a declaration as to the amendment of articles 4621, 4622 and 4624 of the Revised Statutes, that one of its purposes is to confer upon the wife "the power to make contracts," apparently without limitation. If such a law had been actually enacted, there could be no question of the power of the wife to make a contract of the kind here presented, or of any other kind,—contracts not only for her husband, but with her husband, notwithstanding their possible disadvantageous nature and consequent depletion of her separate estate as their result.

There is, however, a wide discrepancy between the caption and the Act as finally passed. This, in a large measure, is explained by the history of the Act as revealed in the legislative journals hereafter adverted to.

In the first place, it is stated in the caption that one of the purposes of the Act is to repeal article 4625,—which prescribes the procedure and form of judgment in suits upon alleged contracts of the wife for necessaries or for the benefit of her separate estate. But in the Act as passed that article is nowhere mentioned.

Furthermore, although the caption announces that the wife is to be clothed with apparently unfettered authority to contract, article 4624 is so amended by the Act itself as to leave her wholly without express statutory power to contract for the benefit or preservation of her separate estate,—a salutary and necessary power, and one with which she had been invested since the Act of March 13, 1848, a period of sixty-five years.

The amendment of article 4621 under the Act introduces a distinct change in the law in respect to the control and management of the wife's separate estate. Whereas under the former law its sole management was given to the husband, such management, together with its sole control and disposition is by the Act given to the wife, with the proviso that the husband's joinder shall be necessary to a conveyance or encum-

brance of her real estate and transfer of her stocks and bonds; with the authority given her, in the event of his refusal, to resort to the District Court for a hearing as to whether such a transaction is to her interest, and in the case of a favorable judgment to execute such conveyance, encumbrance or transfer alone.   It provides that the homestead, whether the separate property of either the husband or wife, or the community property of both, shall not be disposed of except by their joint conveyance.   It contains this significant provision:

"Neither the separate property of the wife, nor the interest on bonds and notes belonging to her, nor dividends on stocks owned by her, nor her personal earnings shall be subject to the payment of debts contracted by the husband."

It is thus declared, not only that the wife's separate property shall not be liable for the husband's debts, but, in addition, that certain classes of community property shall be entitled to the same exemption.

By article 4622 as amended under the Act, the wife's personal earnings, the rents from her real estate, the interest on bonds and notes and the dividends on stocks owned by her, heretofore as community property subject to the husband's management, control and disposition, are given to her sole management and control, and she is invested solely with the power of their disposition, subject to the provisions of amended article 4621.

While it had been held that the husband was without power to dispose of the wife's personal property, even her choses in action (Kempner v. Comer, 73 Texas, 200, 11 S. W., 194),—his authority over her separate estate being restricted by the former statute to its sole "management," his right under that authority to draw from a bank money there deposited in the wife's name, has been recognized (Coleman v. First National Bank of Waxahachie, 94 Texas, 605, 86 Am. St., 871, 63 S. W., 867), though in the particular case the deposit was made by him upon an understanding with the bank that he should have that right.   Upon the subject of bank deposits, amended article 4622 declares that any money on deposit in a bank, whether in the name of the husband or the wife, shall be presumed to be the separate property of the one in whose name it stands, regardless of who made the deposit; and unless notified to the contrary the bank shall be governed accordingly in honoring checks against the account.

Article 4624 as amended reads as follows:

"Neither the separate property of the husband nor the community property other than the personal earnings of the wife, and the income, rents and revenues from her separate property shall be subject to the payment of debts contracted by the wife, except those contracted for necessaries furnished her or her children; provided, the wife shall never be the joint maker of a note or a surety on any bond or obligation of another without the joinder of her husband with her in making such contract."

The remainder of the Act consists of the emergency clause, the ground

for which is declared to be "the injustice to a large number of citizens resulting from the denial to married women, under the present law, of the right to manage their separate property and to make contracts."

In any effort to fairly arrive at the meaning of this Act, it is to be borne in mind that the steady, unbroken policy of the laws of Texas has been to protect the property of the wife from the debts of the husband.   Magee v. White, 23 Texas, 180; Kellett v. Trice, 95 Texas, 160, 66 S. W., 51.   While less liberal than the laws of a number of the States in respect to the management of her property, those laws have been subject to no reproach in their care for its preservation.   From the beginning of the State's history, when, in rejection of the rigid doctrines of the common law, the wife was endowed with the capacity to own a separate estate, they have afforded her property a constant shield against the improvidence of the husband.   This protection of her property from liability for the husband's debts has been an outstanding feature of our system of marital property rights.   It has served the great purpose which lay at the foundation of that system.   It has placed the wife's property beyond the influence, the importunity, or even the necessity of the husband, and has secured to her an actual separate estate, in keeping with the spirit of the broad policy in which her right of ownership had its origin.   If her powers have been restricted, her property, at least, has been safeguarded.   The limitations upon her authority are but the expression of a scrupulous concern for the preservation of her estate, and were imposed to that end.   In that interest her authority to contract debts at all was confined to those essentially to her advantage, that is, for necessaries for herself or her children and the benefit of her estate, with a court, in all suits against her for such debts, charged with the duty of seeing that they were actually incurred for those purposes and were reasonable and proper.

In this Act, which it is asserted had for its purpose the repudiation of this established policy and the destruction of all limitation upon the wife's freedom to charge her estate by simple contract with liability for the husband's debts, this influence of our former laws still survives.   It is found in the emphatic declaration of amended article 4621, already noted, that "neither the separate property of the wife . . . shall be subject to the payment of debts contracted by the husband."

The Legislature had full authority to change the law.   It was within its province to overturn this established policy and through the wife's simple contracts charge her estate with the husband's debts.   But in the execution of such a purpose it is to be assumed that the radical change to be effected by the proposed law would constrain it to the use of language so plain and certain as to stand in no need of construction. The Legislature would not be expected to rest such a law only in the deductions to be drawn from a caption or the inferences of an emergency clause.   It is not to be presumed that its expression would be found in doubtful phrase.   Nor is it to be supposed that it would be left to the

mere implication of a purely negative provision. It would naturally be sought for in the body of an Act, and in terms positive and clear.

The only language in the Act at all capable of being construed as authorizing the wife to become the husband's surety, is that of the proviso of amended article 4624, reading:

"Provided, the wife shall never be the joint maker of a note or a surety on any bond or obligation of another without the joinder of her husband with her in the making of such contract."

This is a restrictive clause,—a purely negative provision. It does not purport to confer upon the wife any express authority. Such as it does confer, is only by implication. It implies that the wife, when joined by her husband in the making of such contract, may become the joint maker of a note with another, or a surety upon another's bond or obligation. It is to be construed as if so written. But the common sense of the language is that it is not the husband's note, bond or obligation that is referred to or intended. It is the note, bond or obligation of "another." in whose execution with the wife he is merely required to join. If his own obligation was intended, his "joinder" with the wife in her execution of the instrument,—entailing a double execution on his part,— would be an entirely superfluous requirement. The wife's signature, with his own as an original maker or principal, would of itself accomplish their joint execution of the obligation, and there could be no need of any further joinder at his hands. It is not to be supposed that the law would require a vain thing. Under this clause the husband's sole relation to such obligations with or of "another" as the wife is there authorized to execute, is simply that of joining in the wife's contract. He is referred to in no other connection. This signifies, clearly, that the husband is not to be the beneficiary of her contract. If the term "another" be construed as including the husband and thus authorizing the wife to become his surety when joined by him in the execution of the obligation, the act must be held as having contemplated that by so joining in the suretyship contract the husband could become his own surety—a manifest absurdity.

The husband's joinder is made necessary not merely to effectuate the wife's contract, but because the obligation is that of someone else to whose advantage it is to obtain her signature, which, in the view of the law, makes it advisable for her protection that the husband concur in her action. For his joinder to have any virtue and fulfill the spirit of the requirement, this must be a disinterested concurrence,—one free from self-interest and that secures to him no selfish advantage. The reason for his joinder is the same which since the Act of 1841 has required, as now found in article 1114, that he join in any conveyance of the wife's real estate. It is to induce his counsel, afford the benefit of his judgment, and give her the protection from imposition which is the husband's duty and should naturally lie within his power. If the obligation which the wife is under this clause authorized to execute, be held to include that of the husband, either as a joint maker or as the prin-

cipal, thus making him the beneficiary of her contract, his concurrence in her execution of it would naturally be an interested one, and the reason for the requirement of his joinder would fail.

Under article 1114 the wife's authority, there conferred, to convey her real estate when joined by her husband in the conveyance, includes, necessarily, the lesser power to encumber it in the same manner. Accordingly, she may mortgage it to secure the husband's debts. Hollis v. Francois, 5 Texas, 199, 51 Am. Dec., 760; Wofford v. Unger, 55 Texas, 480; Kellett v. Trice, 95 Texas, 160, 66 S. W., 51. She incurs, thereby, no personal liability; her property merely stands in the relation of surety for the debt.

The power heretofore possessed by the wife to mortgage her separate property for the debts of the husband was not impaired by this act. It remains with her as aforetime.

It is true that the mortgaging of the wife's real estate for the husband's debts is for the husband's benefit, and it is possible in those conveyances for his joinder to be dictated by self-interest. But in such transactions there is no element of personal liability on the wife's part. And in them provision against the husband's self-interest is made, and protection to the wife from his influence is afforded, by the statutory requirement for her privy acknowledgment. In all such cases it is her private examination, acknowledgment and declaration before the officer which constitute the essence and foundation of her obligation. Cross v. Everts, 28 Texas, 524; Berry v. Donley, 26 Texas, 737: Johnson v. Taylor, 60 Texas, 360.

A brief reference to the history of the act demonstrates that it was not the husband's notes or obligations that were intended by this clause.

As originally passed, the bill had the identical caption of this Act— that is, the Act as finally adopted. And as originally passed, in respect to the wife's unlimited power to contract, it conformed fully to the caption. In the bill article 4624 was so amended as to read:

*"The wife may make any contract which she would be authorized to make but for her marriage, except those herein or elsewhere forbidden, and her coverture shall never be a defense in any suit or action based on such contract. but suits may be brought thereon in the manner prescribed by articles 1840 and 1841."*

This was followed immediately by two provisos in the identical language of article 4624 as amended by the bill as finally passed, as follows:

"Provided, however, that neither the separate property of the husband nor the community property other than the personal earnings of the wife, and the income, rents and revenues from her separate property shall be subject to the payments of debts contracted by the wife, except those contracted for necessaries furnished her or her children; provided, the wife shall never be the joint maker of a note or a surety on any bond or obligation of another without the joinder of her husband with her in making such contract."

Under the first clause of the article as thus originally amended, the

wife was empowered, fully and completely, to join in any obligation of
the husband, to bind herself by simple contract for his debts, to contract
debts, generally, as a feme sole, and to make any other kind of contracts,
as could a feme sole, except those involving the conveyance of her real
estate and the transfer of her stocks and bonds, in which, according to
the amendment of article 4621 in the original bill, the husband was
required to join unless otherwise ordered by the District Court upon a
hearing. With this true, the clause under discussion,—constituting the
second proviso in the article as originally amended—was added as a
limitation, for the purpose of requiring the husband's joinder in her
execution as a joint maker of the notes of other persons, or their bonds
or obligations as a surety. The notes, bonds and obligations thus re-
ferred to were clearly not those of the husband. Her authority to sign
his obligations, either as joint maker or surety, had already been amply
conferred by the first clause of the amended article, and there could be
no occasion for further conferring it in this clause. Such was not the
object of the clause. It was incorporated purely as a proviso to restrict
the larger powers already granted.

Before the bill was acted upon by the Governor it was by joint reso-
lution recalled from his hands. He accompanied its return to the House
with a message in which emphatic objection was urged to the first clause
of the amendment of article 4624, conferring broadly upon the wife the
power to contract as a feme sole. The bill was thereupon reconsidered;
that clause was stricken out, and the bill was finally passed in the form
of the present Act.

The bill was thus, in a large measure, devitalized, since the powers
conferred upon the wife by the stricken clause were its principal feature.
The provision, however, that "the wife shall never be the joint maker
of a note or a surety on any bond or obligation of another without the
joinder of her husband with her in making such contract," in its iden-
tical language, remained in the bill as finally passed. With its language
the same in both bills, its meaning is the same. It had no reference
to the husband's obligations in the Act as originally passed, and in no-
wise authorized the wife to join in their execution, either as a joint
maker or a surety. It has no different meaning in the present Act.

The broad terms of the title of the Act in respect to the wife's author-
ity to contract are thus accounted for. They were intended as a part
of a title of an Act as broad as their general import, but which, as
finally passed, left her in that particular with only restricted powers.
The title of an Act is of influence in its construction. An Act is to be
interpreted in the full light of its title. Missouri, K. & T. Ry. Co. of
Texas v. Mahaffey, 105 Texas, 394, 150 S. W., 88. But the title, of
itself, has no enacting force, and can not confer powers not mentioned
in the Act. Sutherland on Statutory Construction, sec. 339.

It was urged in the argument, as having an important bearing upon
the construction to be given this Act, that our system of marital rights
is not founded in the common law and such rights are not governed by

its doctrines. This, in a large sense, is true. It was so announced by this court at an early time. Bradshaw v. Mayfield, 18 Texas, 21. The dominant feature of our system is its recognition of the separate identity of the wife and her capacity to hold a separate estate. Such principles were unknown to the common law. Our laws upon the subject are in the main but a continuation of the rules of Spanish jurisprudence, which until the Act of 1840 prevailed in the Republic. But it is also true that by the rules of our system the wife, in respect to her power to contract, rests under the same disabilities, except as modified by statute, that her coverture entailed at common law. This was announced as the law of the State as early as Kavanaugh v. Brown, 1 Texas, 481. It has been reaffirmed by repeated decisions. Graham v. Stuve, 76 Texas, 533, 13 S. W., 381; Wadkins v. Watson, 86 Texas, 194, 22 L. R. A., 779, 24 S. W., 385; Cruger v. McCracken, 87 Texas, 584, 30 S. W., 537; Kellett v. Trice, 95 Texas, 160, 66 S. W., 51. It has been expressly recognized in decisions where the court has taken occasion to emphasize the distinction in other particulars between our rules on the general subject and those of the common law. Barkley v. Dumke, 99 Texas, 150, 87 S. W., 1147. Nothing else could well be the law, as pointed out by Judge Stayton in Graham v. Stuve, in a State where the common law, generally, prevails as the rule of decision. Even under the Spanish law the wife was prohibited from becoming a surety for her husband. Cartwright v. Hollis, 5 Texas, 151; Shelby v. Burtis, 18 Texas, 645.

The Act, as has been stated, by implication, authorizes the wife, when joined by her husband, to become the joint maker of a note of another and a surety upon another's bond or obligation. This was the conferring of an original power—one with which she was not theretofore invested. In such cases the maxim, *expressio unius est exclusio alterius,* has marked application. Sutherland on Statutory Construction, sec. 491. It excludes any authority under the Act for her joining in her husband's obligations or becoming his surety.

We feel it our duty to respectfully direct the Legislature's attention to the fact that article 4624 was so amended by this Act as to leave the wife without express statutory authority to contract debts for the benefit of her separate property—a power she had possessed since the Act of 1848 and one vitally in her interest. We can not but believe that this was an inadvertent omission. Whether she would possess this authority as a means of protecting and preserving her separate property and as incident to her power of ownership, is a question upon which it is needless here to express an opinion. It is adverted to in Cartwright v. Hollis, 5 Texas, 152

Our conclusions upon the question decided are supported by the decision of the Court of Civil Appeals in the present case, 192 S. W., 1088; those of the Court of Civil Appeals for the Second District in Akin v. First Nat. Bank of Bridgeport, 194 S. W., 610; and for the Ninth District in First State Bank of Tomball v. Tinkham, 195 S. W., 880; also

by the decision of the Circuit Court of Appeals of the United States in Grossman v. Trust Company, 228 Fed., 610, and of the United States Supreme Court in the same case, 245 U. S., 412.

The judgments of the District Court and Court of Civil Appeals are affirmed.

*Affirmed.*

MR. JUSTICE HAWKINS concurring.

I concur in the disposition of the cause and also in most of the reasoning supporting the conclusion announced in the opinion by our Chief Justice. However, I do not desire to be understood as joining in the expression:

"If his own obligation was intended, his joinder with the wife in her execution of the instrument—entailing a double execution on his part— would be an entirely superfluous requirement."

To my mind the idea of a double execution by the husband seems, in any event, utterly foreign to the statute. I can not believe that even if the proviso were held to authorize the wife to make herself personally liable upon her husband's obligations the language of the Act should be construed as contemplating "a double execution on his part."

In lieu of the quoted portion of the opinion I prefer to say this: As related to an obligation primarily that of the husband, any requirement that he "join" the wife in the execution thereof would be inapt and superfluous; hence the Legislature probably did not intend the proviso to embrace obligations of that kind.

Fortunately the point of difference is merely abstract, and will remain so unless, contrary to the design of said opinion, the idea of "a double execution" may react on Revised Statutes, articles 1114, 1115, wherein both husband and wife are required to "join" in conveyances of the wife's separate realty and of the homestead. Under those statutes one execution by each, whether contemporaneous or not, has been considered sufficient to pass title.