**CROMER et al. v. SCHAFER.** (No. 6919.)

(Court of Civil Appeals of Texas. San Antonio. March 21, 1923. Rehearing Denied April 18, 1923.)

**1. Estoppel ⬅️83(2) — Order authorizing incumbrance of wife's separate property not basis for estoppel or other equitable relief in suit to foreclose mechanic's lien on other separate property.**

An order authorizing a wife permanently separated from her husband to incumber separate property therein described *held* not the basis for an estoppel or any equitable relief in a suit to foreclose a mechanic's lien on other separate property.

**2. Husband and wife ⬅️169(2)—Wife cannot incumber separate lands without husband's joinder unless authorized by court order where husband has permanently abandoned her, is insane, or refuses to join.**

Under Acts 35th Leg. (1917) c. 194 (Vernon's Ann. Civ. St. Supp. 1918, art. 4621), amending Acts 33d Leg. (1913) c. 32, which amended Rev. St. arts. 4621, 4622, 4624 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 4621, 4622, 4624), and repealed article 4625, a married woman cannot incumber her separate lands without her husband's joinder unless authorized by a district court order and then only if the husband has permanently abandoned her, is

insane, or refuses to join, and it would be advantageous to the wife's interest; no substantial change in such particular being made by Acts 37th Leg. (1921) c. 130 (Vernon's Ann. Civ. St. Supp. 1922, art. 4621).

**3. Constitutional law ⬅️70(3) — Courts not concerned with question whether change in law is burden or hardship on class affected.**

Whether Acts 35th Leg. (1917) c. 194, p. 436, amending Acts 33d Leg. (1913) c. 32 (Vernon's Ann. Civ. St. Supp. 1918, art. 4621), so as to permit a married woman to incumber her separate lands without her husband's joinder only when so authorized by a district court order, when the husband has permanently abandoned her, is insane, or refuses to join, is a burden or hardship on married women, is a matter with which the courts can have nothing to do.

**4. Mechanics' liens ⬅️68 — Contract for improvement on separate property of wife permanently separated from husband held invalid for purpose of fixing mechanic's lien.**

A contract with a married woman, permanently separated from her husband, to erect improvements on her separate property, *held* invalid for the purpose of fixing a mechanic's lien thereon, in the absence of a district court order authorizing her to place such incumbrance thereon without her husband joining or a showing that he had permanently abandoned her, was insane, or refused to join, as provided by Acts 35th Leg. (1917) c. 194 (Vernon's Ann. Civ. St. Supp. 1918, art. 4621).

**5. Appeal and error ⬅️843(1)—Other errors than those for which judgment was reversed and case remanded not discussed, especially where repleader necessary.**

Errors other than those because of which a judgment is reversed and the case remanded need not be discussed, especially where a repleader may be necessary.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Action by W. A. Schafer against M. A. Cromer and husband. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

McCart, Curtis & McCart and R. H. Smith, all of Fort Worth, for appellants.

Frank R. Graves and Milton M. Heath, both of Fort Worth, for appellee.

COBBS, J. This suit was brought by appellee against appellants to recover judgment and to foreclose a mechanic's lien. The case was tried before the court with a jury, and upon whose answers being favorable to appellee a judgment was rendered in favor of appellee in the aggregate sum of $3,433.75, and fixing his mechanic's lien against the premises ascribed to the extent of $3,121.55.

On February 17, 1921, Mrs. M. A. Cromer, appellant, entered into a written contract with appellee for the erection of improve-

ments on her separate property described as lot 52 in block 5 of Treckhis subdivision of block 16, Field-Welch addition to the city of Fort Worth, Tarrant county, Texas, and known as being house 1019 College avenue. This was the homestead.

[1] At the time this contract was entered into, Mrs. Cromer was, and still is, the wife of H. R. Cromer, from whom she represented to appellee she had been permanently separated, though not divorced. She further represented that in a suit in the Sixty-Seventh district court of Tarrant county she had procured an order of the court authorizing her to incumber her separate property, and referred appellee to the same. The property described in that order was entirely different and distinct real estate from the property in controversy, and the petition and order therefore were based upon entirely different and distinct property and entirely different and distinct grounds than sought in this case as the authority, and may be laid out of sight for any purpose in this discussion, and cannot be, as claimed by appellee, either an estoppel not pleaded or the basis of any equitable relief whatever to establish an incumbrance upon the homestead and separate property of the married woman.

The written contract recites that Mrs. M. A. Cromer, in making the contract, was "acting independent of her husband by virtue of an order from the district court authorizing her to incumber her separate estate." The contract provided in case of changes and alterations a memoranda be attached to the contract as a part thereof; that the amount set forth in the plans and specifications was merely a contractor's approximate estimate on the cost and the charge for the work, and the amount, when designated, shall constitute the amount for which the lien is given and created. The appellee was to recover 10 per cent. on all amounts expended for material and labor, to be added to the total amount expended for material and labor on said job. As to the aggregate amount to be paid the contract provided as follows:

"In consideration of the premises and agreement of the party of the first part herein set forth, the party of the second part agrees to pay to the party of the first part, or his assigns, the sum of $1,650.00, to or from which shall be added or subtracted as the case may be, such sum, if any, as may be determined by the parties on account of the alterations or additions as hereinbefore provided, such sum of money to be paid by the second party to the party of the first part, his heirs or assigns, at the time said work is completed and turned over to said party of the second part by said party of the first part."

The acknowledgment of Mrs. M. A. Cromer to her signature to said contract was that of a feme sole.

Mrs. Cromer executed and delivered, in accordance with the contract, her note for $1,650 to appellee.

The court submitted to the jury only three questions to answer, which, together with the answers of the jury, are as follows:

"Question No. 1. What was the reasonable cost of the material and labor that was used by the plaintiff in making the improvements on the premises at 1019 College avenue? Answer: $2,650.

"In answering the above question, you will not take into consideration the 10 per cent. allowed the contractor under the contract, but will merely state the amount of the reasonable cost of such material and labor as was actually used in the premises by the plaintiff.

"Question No. 2. Prior to February 17, 1921, had the husband of defendant Mrs. Cromer voluntarily abandoned her with the intention of not returning to and living with her, and upon said date of February 17, 1921, were defendants Mr. and Mrs. Cromer living separate and apart by reason of said abandonment? Answer: Yes.

"Question No. 3. If in answer to question No. 1 you state an amount in excess of $1,500, then you will state whether or not defendant Mrs. Cromer was informed of the approximate amounts of such additional items of improvements which were made by plaintiff, and which went to make up such amount in excess of $1,-500, and agreed to same? Answer: Yes."

From the view we take of the case it is not necessary to discuss the alleged special issues requested by appellant and refused. Appellee was to receive $1,650 for his services and 10 per cent. of all amounts expended for labor and material, and to which sum or sums should be added or subtracted as might be determined by them on account of the alterations or additions, which alterations or changes should be represented by a memorandum made and attached to the contract and made a part of it, and thereby constitute a portion of the contract and the lien. This part of the contract was never complied with, covering any additional work done thereunder, and appellee never informed appellant the amount of such bill until after she signed the acceptance, when he rendered her an itemized statement showing a total claim of $3,427.62, which she declined to pay.

It is shown that at the time this contract was made the property was appellant's homestead and separate estate, and that Mr. Cromer, her husband, had permanently abandoned her with no intention of returning to her to live with her, though he sat in court during the trial as stated by counsel in their argument before this court.

For the purpose of simplifying and narrowing down the issue in this discussion of the power of the wife to dispose of her property in case of her abandonment by him prior to 1913, we will simply say in passing, so to speak, it was well understood by many lay-

men that such power existed, and conveyances were usually made with such recitals to indicate the authority of the woman to make a good title. Harris v. Hamilton (Tex. Com. App.) 221 S. W. 275; Mabry v. Lbr. Co., 47 Tex. Civ. App. 443, 105 S. W. 1157; Slator v. Neal, 64 Tex. 222; Hector v. Knox, 63 Tex. 613.

[2] The law pertinent to the question here involved provided among other things:

"The homestead, whether the separate property of the husband or wife, or the community property of both, shall not be disposed of except by the joint conveyance of both the husband and the wife." Acts 33d Leg. Reg. Sess. c. 32, p. 61.

In 1917 this law was further amended, providing that the joinder of the husband should be necessary to an incumbrance or conveyance of the wife's land, but if he had permanently abandoned her or refused to join in such incumbrance or conveyance, she might apply to the district court for authority to make such incumbrance or conveyance without him. It further provided that, where the husband had permanently abandoned the wife or was insane, in this instance the wife might convey the homestead if her separate property, in the manner above provided for other conveyances by her. Acts 35th Leg. Reg. Sess. c. 194, p. 436. In 1921 the law was again amended, but we see no substantial change in the particular under discussion as to her power. Acts 37th Leg. Reg. Sess. c. 130, p. 251 (Vernon's Ann. Civ. St. Supp. 1922, art. 4621). On the subject see articles 4621, 4622, and 4624, R. S., which were amended by the said act of 1913 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 4621, 4622, 4624), which repealed article 4625, R. S.

Under the act of 1913, the married woman's power as to her separate estate was enlarged to the extent only of giving her the management, control, and disposition thereof subject to the provisions as to incumbrance, conveyance, or transfer of certain property to which extent a distinct change was made in respect to her control and management of her separate property.

This whole subject has been so fully and ably discussed by Chief Justice Phillips in Bank v. Ferguson, 109 Tex. 287, 206 S. W. 923, and other cases such as Moss v. Ingram (Tex. Civ. App.) 239 S. W. 1029, Williams v. Bank (Tex. Civ. App.) 201 S. W. 1083, Sewell v. Walton (Tex. Civ. App.) 204 S. W. 372, and Aiken v. Bank (Tex. Civ. App.) 198 S. W. 1019, that it would be a work simply of supererogation to exploit our views at any length.

As said, prior to these amendments, out of necessity grew the power vested in the wife to convey or create a valid lien on her separate property or her homestead without the husband (who had so far forgotten his moral and legal obligations) joining her, and who continued to remain away, and not support her. By leaving her to her fate, he thereby created the very status which gave the wife the power over her property as a feme sole the same as though no marital relation ever existed. While living in fact, the law treated him as a dead husband.

[3] As we construe these amendments, article 4621, Vernon's Tex. Stat. 1918 Supp., it circumscribed and narrowed the married woman's individual power in the particular respect to incumber and convey her separate lands for any reason, without the joinder of her husband, unless authorized to do so by an express order from the district court, and then only in cases where "the husband shall have permanently abandoned his wife, be insane, or shall refuse to join in such incumbrance or transfer of such property." The matter seemed to the Legislature to be of such grave importance to the ultimate protection of the married woman in her estate that it provided such matters could be heard and disposed of speedily and in vacation so as to not cause unreasonable delay, but even then it will be noticed that satisfactory proof was required "that such incumbrance, conveyance or transfer would be advantangeous to the interest of the wife," etc. Whether this be considered a burden or hardship on married women in changing the law is a matter with which the courts can have nothing to do.

Chief Justice Phillips, in Red River Nat. Bank v. Ferguson, 109 Tex. 287, 206 S. W. 923, took occasion to direct the attention of the Legislature to article 4624 so amended as to leave the wife without express authority to contract debts for the benefit of her separate property which she had possessed ever since 1848, so vital to her interest.

As said in Jackson v. Carlock (Tex. Civ. App.) 218 S. W. 583:

"It is very clear, we think, as in effect stated by Judge Phillips, that the proviso in reference to the conveyance and incumbrance of the wife's real estate constitutes a limitation upon the previous portion of the statute, which declares that during marriage the wife shall have the sole disposition of her separate property. Prior to that time a married woman could not convey her separate estate unless her husband joined in the conveyance, and her separate acknowledgment was taken by an officer, and the proviso under consideration expressly declares that 'the joinder of the husband in the manner now provided by law for the conveyance of separate real estate of the wife shall be necessary to an incumbrance or conveyance by the wife of her lands, and the joint signature of the husband and wife shall be necessary to a transfer of stocks and bonds belonging to her.' The language quoted is followed with an additional proviso that, if the husband shall refuse to join in such incumbrance or conveyance, the wife may, by making a proper showing, procure an order of court authorizing her to make

such incumbrance, conveyance, or transfer without the joinder of her husband.

"As we construe the two provisos referred to, the act leaves the law, as it was before in reference to the sale and the separate real estate of incumbrance of the wife, with only one exception, which, in substance, is that, if the husband refused to join in a conveyance or incumbrance of the wife's separate property, the wife may, but no one else can, procure an order of court permitting her to convey or incumber the property without her husband joining therein."

The language is very plain as to when and how the married woman may impose such an incumbrance.

[4] From the view we take of this case and construing the foregoing provisions of the act, no other conclusion can be reached than that this contract is utterly invalid for the purpose of fixing a mechanic's lien upon her said property.

As long as the parties are not divorced, the relation of husband and wife continues. They may return at any time and renew those relations without any formal legal authority. The wife is not, during such interregnum, a feme sole. She is a married woman. It would seem that the Legislature threw the protecting care of the court around the wife, and limited the power she aforetime had in respect to the disposition of her real property. The alleged permanent separation gave the right to her to appeal to the court upon the refusal of the husband to join in the conveyance, and thus impliedly gave him, or any friend of the court, the right to contest the application as to whether or not the incumbrance or sale "would be advantageous to the interest of the wife."

[5] There are some very serious errors assigned in this case, but, as the case must be reversed, we will not discuss them, especially as it may be necessary for a repleader.

For the reasons given, the judgment is reversed, and remanded for another trial.