**GOHLMAN, LESTER & CO. v. WHIT-
TLE et ux. (No. 8355.) ***

(Court of Civil Appeals of Texas. Galveston.
June 1, 1923. Rehearing Denied
Oct. 4, 1923.)

**1. Husband and wife ⬤═25(1) — Wife may
make contract through husband as agent.**

A wife has the right to contract through
her husband as agent.

**2. Husband and wife ⬤═152—Wife can only
make such contracts as are authorized by
statute.**

Under Vernon's Sayles' Ann. Civ. St. 1914,
art. 4621, giving to the wife the sole manage-
ment, control, and disposition of her separate
property, both real and personal, a married
woman can make only such contracts as are
expressly or by necessary implication author-
ized by the statute, and is not authorized to
make any contract not prohibited by the act
itself, or which is not otherwise unlawful.

**3. Husband and wife ⬤═138(10)—Wife cannot
be held liable as undisclosed principal on con-
tract made by husband.**

A wife cannot be held liable as an undis-
closed principal on contracts made by husband,
notwithstanding Vernon's Sayles' Ann. Civ. St.
1914, art. 4621, giving to the wife the sole man-
agement, control, and disposition of her sep-
arate property.

**4. Husband and wife ⬤═257—Crops on wife's
farm in charge of husband under agreement
that farm should be operated for benefit of
family held common property of both.**

Where husband and wife agreed that hus-
band should take charge of wife's farm and cul-
tivate it or have it cultivated for the benefit of
the family, the crops raised on the farm did
not become the separate property of the wife,
but were the common property of both, and
the wife's interest therein was only the one-
half interest which she would have in any com-
mon earnings of herself and husband.

**5. Husband and wife ⬤═235(2)—Husband, in
making contract with cotton brokers as to
cotton grown on wife's farm under agreement
making crops common property, did not act
as wife's agent as matter of law.**

Where a husband was in charge of wife's
farm under an agreement making the crops
the common property of both, the husband, in
making a contract with cotton factors, did not
as a matter of law act as agent for the wife,
but his intention so to act must be shown in
order to make the contract binding on the wife.

**6. Husband and wife ⬤═138(2)—Evidence held
to prove that husband, in making contract
with factors as to cotton grown on wife's
land, did not act as wife's agent.**

In action by cotton factors for advances
made on cotton grown on wife's land under
agreement making crops common property of
husband and wife, evidence *held* to show that
the husband in making the contract with the
factors did not act as the wife's agent.

**7. Husband and wife ⬤═162—Wife held not lia-
ble on husband's contract with cotton factors
relating to cotton grown on her farm.**

Where husband cultivated wife's farm under
agreement making the crops the common prop-
erty of husband and wife, the wife is not lia-
ble on contract made by the husband with fac-
tors making wife personally liable for repay-
ment of advances, since such contract was not
necessary to enable her to properly manage,
control, or dispose of her separate property.

Appeal from District Court, Harris Coun-
ty; Chas. E. Ashe, Judge.

Suit by Gohlman, Lester & Co. against
J. W. Whittle and wife. From a judgment
awarding insufficient relief, plaintiff appeals.
Affirmed.

Andrews, Streetman, Logue & Mobley and
Cole & Cole, all of Houston, for appellant.

Woods, King & John, of Houston, for ap-
pellees.

PLEASANTS, C. J. This suit was original-
ly brought by appellants, a firm of cotton mer-
chants and factors, against J. W. Whittle, to
recover the sum of $16,197.97, alleged to be
due them by the defendant for advances made
to him upon 193 bales of cotton shipped them
by defendant for sale, and for freight, storage
and insurance charges on said cotton. On
the filing of the suit attachment was sued out
and levied upon lands in Hardeman county
supposed to be owned by the defendant. Up-
on the coming in of the defendant's answer,
and after the depositions of Mrs. Ada T.
Whittle had been taken, it was shown that
the land on which the attachment had been
levied was claimed by Mrs. Whittle as her
separate property. Plaintiffs therefore
amended their petition, made Mrs. Whittle a
party defendant, and sought judgment against
both defendants for the amount of the debt
and foreclosure of their factor's lien on the
cotton.

As a basis of the liability against Mrs.
Whittle, it was alleged that the cotton so
shipped by the said J. W. Whittle, and on
which the advancements were made, consti-
tuted the separate property of Mrs. Whittle,
the same having been grown on land which
constituted her separate property, and that
the said J. W. Whittle had acted throughout
the transaction as the agent of his wife, who
constituted the undisclosed principal in the
transaction. As to the notes for margins for
$3,000 and $1,500 respectively, which consti-
tute a part of plaintiffs' claim, plaintiff plead-
ed in the alternative that, if J. W. Whittle
was not authorized to bind his wife in the
execution thereof, then the notes were execut-
ed for moneys previously advanced on said
cotton by the plaintiffs, and they did not
know at the time they accepted said notes
as margins that the said J. W. Whittle was
acting in the whole transaction as an agent

---

⬤═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted November 21, 1923.

of his wife, who was his undisclosed principal, and that, if plaintiffs could not recover on the notes, then they be permitted to recover on the advancements originally made for which the notes had been executed.

Alternative allegations were made seeking to hold both Mr. and Mrs. Whittle liable concurrently, and, if Mrs. Whittle was neither liable severally or jointly with her husband, seeking to fasten liability solely and alone on the said Whittle. It was also sought in the petition to have cancelled certain deeds executed by the defendant J. W. Whittle to his wife, Ada T. Whittle, of the lands which had been attached, but in the course of the trial it was mutually agreed to eliminate any contest as to the title of the lands in question.

Mrs. Whittle filed a plea of privilege to be sued in Potter county, Tex., which was controverted by the plaintiffs, and subject to her plea filed her answer, embodying a general demurrer, and certain special exceptions unnecessary to detail because eliminated in the course of the trial, followed by a general denial, together with disclaimer of any interest in the cotton shipped to plaintiffs, and pleaded coverture.

The defendant J. W. Whittle filed a motion to quash the attachment levied on the land, and, subject to the motion to quash, filed a general demurrer and general denial and special plea asserting that the cotton shipped was of sufficient value to pay the advancements, and only the negligent action of the plaintiffs in not selling the same seasonably occasioned any inadequacy of security, and at the same time filed a cross-action against plaintiffs based on damages alleged to have been sustained in the sum of $10,000 by the alleged wrongful issuance and levy of the attachment.

Plaintiffs filed supplemental pleadings for reply to Mr. and Mrs. Whittle's pleadings, which amounted in substance to general denials of the truth thereof.

The case came on for disposition before the court, who rendered judgment on March 18, 1922, overruling Mrs. Whittle's plea of privilege, and sustaining her general demurrer in so far as plaintiff's alleged cause of action against her for personal liability was concerned, overruling J. W. Whittle's motion to quash the attachment, and, on agreement of the parties, dismissing out of the case any contest of the title to the lands, or any issue looking to the cancellation of the deeds from Mr. J. W. Whittle to Mrs. Whittle, without prejudice to either of the parties to litigate such question in the proper form where the lands were situated, dismissing said J. W. Whittle's action against Gohlman, Lester & Co. and the Lion Bonding & Surety Company, their surety on the attachment bond, for damages growing out of the alleged wrongful issuance of the attachment, rendering judgment for plaintiffs against the defendant J. W. Whittle for the sum of $18,522.23, together

with the foreclosure of a factor's lien on 188 bales of cotton on hand at the time, and foreclosing the attachment lien on the land in so far as any interest therein might be owned by the defendant J. W. Whittle, and refusing to render judgment in favor of plaintiffs against Mrs. Ada T. Whittle. This judgment of the trial court is based upon the following findings of fact filed by the court:

After finding that the 193 bales of cotton were shipped plaintiffs by J. W. Whittle, and the advances were made him, and the charges and expenses incurred by plaintiff in handling said cotton as alleged in their petition, and that this was the usual and customary way of marketing cotton, the court made the following fact findings:

" 'That it was agreed that plaintiffs might have on said cotton a factor's lien to secure plaintiffs, in the repayment to them of their advancement and of any charges to which plaintiffs might be entitled in connection with said transaction and the handling of said cotton.'

"Under fact finding VIII the court found that the cotton market continued to decline, and, J. W. Whittle having failed to respond to calls for margins, that they brought suit and caused a writ of attachment to issue and be levied on land in Hardeman county, Tex., as the land of said Whittle.

"The court's fact finding X is as follows:

" 'That the land on which the cotton was grown, which was shipped to plaintiffs and on which said advancements and charges accrued, was the separate property of the defendant Mrs. Ada T. Whittle; that the defendant J. W. Whittle, as the husband of defendant Ada T. Whittle, and with her full authority and consent, and as her agent, had full charge, supervision, and management of said farms, which lay in Hardeman county, Tex., and had charge of the renting of said farms and the cultivation thereof and the marketing and selling of said cotton, and all the income to be derived from said crops was used by them for their mutual benefit. That the farms were rented to several different tenants, who produced the cotton on the land which was shipped to the plaintiffs, under contracts by which the tenants would own certain portions of the crop and the owner of the land would own the proper portion; and plaintiffs offered to introduce testimony to show that advancements were made to said tenants to enable them to plant and produce said crops, and that the advancements made by the plaintiffs against said cotton was for the purpose of repaying the advancements made by the owner of said land to the tenants to enable the tenants to cultivate said crops, but the court refused to permit the introduction of said testimony, because of the court's ruling that in no event under the allegations could the defendant, Mrs. Ada T. Whittle, be held liable for any deficiency judgment that might be recovered, as the undisclosed principal of the defendant J. W. Whittle or otherwise. That the respective portions of the ownership of the cotton crops on said land belonging to Mrs. Whittle was three-fourths to the tenants planting and cultivating the same and one-fourth to the owner of the land. That the status between the defendants J. W. Whittle

and wife with regard to the management of said farms and the marketing of said crops is shown by the following testimony of said two witnesses:

"The defendant, J. W. Whittle, in answer to the fourteenth interrogatory in his deposition, testified:

" 'I managed and supervised the renting of the land, the planting of crops and the marketing of the crops. I had an arrangement with my wife whereby I managed and supervised the renting of the land, the planting of the crops and marketing them, and we used the rentals and proceeds of the land and cotton for the support of our family. That is, my time and labor offset the use of the land, and the earnings from the land was divided half and half between us, out of which we lived and supported our family.'

"Mrs. Whittle testified in her deposition in answer to cross-interrogatories 31, 33, 40, and 41, as follows:

"Answer to cross-interrogatory No. 31:

" 'He had not been engaged in farming these lands in Hardeman county and he has not raised a good deal of cotton on them, if you mean farming them for his own individual benefit. If you mean that he has engaged in farming these Hardeman county lands for me and that he has raised a good deal of cotton on them for me, I will say yes, the proceeds of which were disposed of as heretofore testified to, to wit, the maintenance of our family and the education of our children.'

"Answer to cross-interrogatory No. 33:

" 'Your question assumes that my husband was farming for himself in Hardeman county. If that is what you mean, he did not make any money during any of the years. If you mean that while he was farming in Hardeman county for me did he make any money, I will say yes; he made money until the last 3 or 4 years, and averaged about $3,500 a year, which money was spent, as I have heretofore stated, in the maintenance of our family and the education of our children. Some of it was spent in the improvement of our home in Amarillo and for the purchase of our home in Amarillo.'

"Answer to cross-interrogatory No. 40:

" 'My husband has attended to the management of the farms, the cultivation and planting of the same, but they are my property, and he has not managed them by any right claimed by him, but simply from the natural interest that he had in me and our family and in trying to make my property return as large a revenue as it could be made to return.'

"Answer to cross-interrogatory No. 41:

" 'My husband is the only person who has over-seen the farms and attended to the crops raised thereon and to the marketing of the crops, and this has at all times been entirely agreeable to me, and is agreeable to me now, and will continue to be agreeable to me, and I have never raised any objection to his doing so, but expect him to continue to manage the farms for me as he has heretofore done, that is, as long as he is physically able to do so.'

"That none of the facts with reference to the separate ownership of said lands or said cotton were known to plaintiffs until after the institution of this suit."

Under appropriate assignments and propositions appellants assail the judgment of the trial court on the ground that the facts alleged in the petition and found by the court plaintiffs were entitled to a personal judgment against Mrs. Whittle, as the undisclosed principal of her husband in the transaction between him and plaintiffs by which the indebtedness sued for was incurred, and the court erred in not rendering such judgment and in sustaining Mrs. Whittle's general demurrer to the allegations of plaintiffs' petition charging her with personal liability for the entire indebtedness. Appellants further contended that, if they are not entitled to judgment against Mrs. Whittle for the full amount of the indebtedness, they should have judgment for one-fourth thereof on the finding of the court that one-fourth of the cotton was owned by Mrs. Whittle, and that in any event Mrs. Whittle should be held liable for the freight, storage, and insurance charges on her cotton.

The questions presented are argued with much force and learning by the briefs of both parties. Appellants' case is predicated upon the general proposition that since the so called "emancipation" of married women by the act of the Legislature giving to the wife "the sole management, control, and disposition of her separate property, both real and personal" (Vernon's Sayles' Civil Statutes, art. 4621), any contract which a married woman may lawfully make can be made through her husband as her agent, and that the law of undisclosed principal applies fully to any lawful contract made by the husband as agent of his wife.

[1] The right of the wife to contract through her husband as agent and her liability on lawful contracts so made by her seems to be well settled. Whitney Hardware Co. v. McMahan, 111 Tex. 242, 231 S. W. 694; Barber v. Keeling (Tex. Civ. App.) 204 S. W. 139. These cases, however, do not support the contention that a wife can be held personally liable as an undisclosed principal on a contract made by the husband in his own name and accepted and acted on by the other party to the contract, who relied solely on the husband's promise and responsibility, as the contract of the husband.

[2, 3] It is not true that by the passage of the act above cited a married woman was authorized to make any contract not prohibited by the act itself, or not otherwise unlawful, but, on the contrary, for her own protection she is still restrained from making any contract except such as is expressly or by necessary implication authorized by the statute. Red River National Bank v. Ferguson, 109 Tex. 287, 206 S. W. 923; Kellett v. Trice, 95 Tex. 168, 66 S. W. 51; Wadkins v. Watson, 86 Tex. 194, 24 S. W. 385, 22 L. R. A. 779.

Under the common law and our statute law as it existed prior to the passage of this act no rule affecting the rights of a married woman was more generally recognized than

that she could not be held liable as an undisclosed principal on contracts made by her husband. There is nothing in the statutes before cited which evidences any intention on the part of the Legislature to change this rule. As said by Chief Justice Phillips in the case of Bank v. Ferguson, supra, in discussing the question of whether under this act a married woman could be held liable on her contract as surety for her husband:

"The Legislature had full authority to change the law. It was within its province to overturn this established policy and through the wife's simple contracts charge her estate with the husband's debts. But in the execution of such a purpose it is to be assumed that the radical change to be effected by the proposed law' would constrain it to the use of language so plain and certain as to stand in no need of construction. The Legislature would not be expected to rest such a law only in the deductions to be drawn from a caption or the inferences of an emergency clause. It is not to be presumed that its expression would be found in doubtful phrase. Nor is it to be supposed that it would be left to the mere implication of a purely negative provision. It would naturally be sought for in the body of an act, and in terms positive and clear."

The general doctrine of the liability of an undisclosed principal is well established, and its application is sometimes necessary in the administration of justice and equity; but there are many exceptions to the rule, and none rests upon firmer foundations than the one which denies its application to a married woman. Our Supreme Court in the case of Sanger v. Warren, 91 Tex. 482, 44 S. W. 479 (66 Am. St. Rep. 913), in discussing the doctrine of undisclosed principal, uses this language:

"The exceptions to the rule however are so numerous, broad and well defined, and rest upon principles of such fundamental character, that the careful student of the law is driven to the conclusion that they are more important than the rule itself, and that the statement of the rule in such broad language has produced much confusion of thought and greatly embarrassed and probably has often misled the courts in their efforts to apply correct legal principles to particular cases."

So far from the act in question showing any intention of "emancipating" married women by changing the law which had theretofore protected them from liability as undisclosed principals upon improvident contracts made by their husbands, it is not an unreasonable construction of the act to hold that in providing in said act that "neither the separate property of the wife, nor the rents from the wife's separate real estate, nor the interest on bonds and notes belonging to her, nor dividends on stocks owned by her, nor her personal earnings, shall be subject to the payment of debts contracted by the husband, "the Legislature intended to expressly preserve the immunity of the wife from lia-

bility as the undisclosed principal in contracts made by the husband. It could hardly have been thought necessary to provide that the wife's separate estate could not be held liable for debts contracted by the husband for his own benefit, or that of his separate estate, and it seems to us this provision may be reasonably construed as applying to the contract sued on in this case.

But, regardless of the soundness of this construction of the quoted provision of the statute we cannot, as before said, construe the statute as a whole as creating liability of a wife as the undisclosed principal in contracts made by her husband.

[4] We have so far treated the question presented on the assumption that J. W. Whittle in fact made the contract with appellants for the benefit of Mrs. Whittle's separate estate and as her agent in the management of her estate, and that the contract was one which Mrs. Whittle was empowered to make. We think, however, that the evidence fails to sustain either of these assumptions. It is true that the trial court finds that Mrs. Whittle was the owner of one-fourth of the cotton, but this finding is based entirely on the showing that the tenants on the farm were entitled to three-fourths of the cotton raised by them, and the landlord to the remaining one-fourth, and, Mrs. Whittle being the owner of the land, the crops raised thereon became under the law her separate property.

To hold on the facts of this case that the crops or proceeds of the crops raised on this farm became the separate property of Mrs. Whittle is contrary to the undisputed testimony set out in the court's findings of fact. We think the uncontradicted testimony of Mr. and Mrs. Whittle set out in the court's findings shows that the agreement between them was that Mr. Whittle would take charge of the farm and cultivate it or have it cultivated for the benefit of the family, and the crops raised on the farm under this agreement did not become the separate property of Mrs. Whittle, but were the common property of both, and Mrs. Whittle's interest therein was only the one-half interest which she would have in any common earnings of herself and husband.

[5, 6] Mrs. Whittle's interest being at the most only an eighth, and her husband having an equal interest, it cannot be held as a matter of law that in making the contract Whittle was acting as agent for his wife, but his intention so to act must be shown in order to make the contract binding on Mrs. Whittle. We think the evidence in this case conclusively shows that in making this contract Whittle was not acting as the agent of his wife. The following quotation of authorities taken from appellee's brief shows the rules of law applicable to this question:

"(1) 'It is well settled that if there be an interest and a power existing together in the

same person over the same subject, and an act be done without particular reference to the power, it will be applied to the interest, and not to the power.' Arnold v. So. Pine Lbr. Co., 58 Tex. Civ. App. 196, 123 S. W. 1167.

"(2) The rule which we deduce from the American authorities is that a trustee or donee of a power may execute the power conferred upon him by an instrument which does not refer to the power itself, but in such case, to make the execution of the power valid, it must appear from the instrument or from the attending circumstances that the donee or trustee did in fact act under and by virtue of the power conferred upon him to dispose of the property in question, and that it was his intention to dispose of the property in accordance with the power so conferred. If from the circumstances or the instrument executed it be doubtful as to whether it was the intention to execute the power possessed by the grantor, then it will not be held that by such act or conveyance that power was in fact executed.' Hill v. Conrad, 91 Tex. 345, 43 S. W. 791.

"(3) One may be a general agent (partner) for another (the partnership); but, if he incurs an obligation in his own name, making the contract 'in his individual capacity and not in the character of an agent,' the party for whom he had the power to act, but did not, is not liable even though receiving the benefit of the contract. 30 Cyc. 483, 484; Willis v. Hill, 19 N. C. 231. 31 Am. Dec. 412.

"(4) One may be another's agent, but if, in order to serve one's principal, and at the same time to serve a third party, one makes a contract in one's own name, in doing so one does not establish a 'privity of contract' between the second contracting party, and any other than one's self; and the doctrine of 'undisclosed principal' may not be applied to such contract. H. Midwood's Sons Co. v. Alaska-Portland Packers' Ass'n, 28 R. I. 303, 67 Atl. 61, 13 Ann. Cas. 954; Beckhuson & Gibbs v. Hamblet [1900] 2 Q. B. (Eng.) 18."

It seems to us that this record as a whole merely presents a case in which by the consent of the wife the husband took charge of a farm which was her separate property, cultivated it, and disposed of the crops raised thereon for their common benefit and that of their family, and that in disposing of the crop so made without any express authority, and not even with the knowledge of his wife, he incurred the indebtedness for which this suit is brought, and that plaintiffs extended him no credit on his wife's account, but accepted and relied solely on his promise to pay such indebtedness. Under this state of facts no rule of law or equity will hold Mrs. Whittle and her separate estate, other than her interest in the cotton to which she makes no claim for the debt so incurred by her husband.

[7] In addition to this we do not think the contract made by J. W. Whittle with appellants was necessary to enable him to dispose of the cotton. It may have been a usual method of marketing cotton, but it can hardly be said that Mrs. Whittle could not have readily disposed of her interest in the cotton without making a contract which subjected her entire separate estate to the vicissitudes of a speculative cotton market, and this was the effect of the contract between appellants and J. W. Whittle. In this view of the case it is immaterial whether the contract was made for her. If it was not necessary to enable her to properly manage, control, or dispose of her separate property she could not be held liable therein. Wadkins v. Watson, 96 Tex. 194. She was authorized to hold her cotton and borrow money on it as security, and if this was the effect of the contract appellants could look only to the cotton for a repayment of their advances and could not hold her personally liable therefor. Mills v. Bank (Tex. Civ. App.) 208 S. W. 698; Johnson v. Scott (Tex. Civ. App.) 208 S. W. 671.

The conclusions above expressed require an affirmance of the judgment; and it has been so ordered.

Affirmed.