SEWELL v. WALTON et al. (No. 1988.)

(Court of Civil Appeals of Texas. Texarkana. May 23, 1918.)

1. HUSBAND AND WIFE ⬤☞113—WIFE'S SEPARATE PROPERTY — RIGHT TO CONTRACT — STATUTES.

Acts 33d Leg. c. 32 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 4621, 4622, 4624), relating to the rights of married women, does not confer upon a married woman a power she did not have before to contract generally as a feme sole might, but deprives her of the power she did have before its passage to bind herself by a contract made by her alone for the benefit of her separate estate.

2. HUSBAND AND WIFE ⬤☞229(3) — WIFE'S SEPARATE PROPERTY—ESTOPPEL—PLEADING.

In a suit on a promissory note given for the purchase price of real estate by an unmarried woman, who had subsequently married and gave the note in renewal of notes previously executed, a petition alleging that she had stated that she was living apart from her husband at the time she gave the note, and did not wish him to have anything to do with her affairs, did not sufficiently allege ignorance of the truth and reliance on such statement, so as to estop defendant to deny it.

Appeal from District Court, Camp County; J. A. Ward, Judge.

Suit by H. L. Sewell against Alice Walton and others. From a judgment for defendants, dismissing the case on demurrer, plaintiff appeals. Affirmed.

The suit was commenced by a petition filed September 1, 1917. Appellant was the plaintiff, and appellees, Alice Walton, her husband, Cline Walton, and C. G. Engledow, were the defendants. Appellant's original petition contained allegations as follows:

(1) That said appellant on December 22, 1903, sold and by a deed of that date conveyed 100 acres of land, particularly described, to appellee Alice Walton, the consideration being her five promissory notes of that date, for $110 and interest each, payable October 1, 1907, 1908, 1909, 1910, and 1911, and secured by a vendor's lien expressly retained on said land.

(2) That said Alice Walton afterwards paid the one of said notes which first matured.

(3) That on September 23, 1913, the other four notes were unpaid; that on that day Alice Walton, "who in the meantime had intermarried with one Cline Walton, came to plaintiff and represented that she and her said husband, Cline, were separated and were living separate and apart; that she did not wish him to have, and refused to allow him to have, anything to do with her affairs;

that she was not then able to pay the balance" of the purchase price and interest, to wit, $792, due on the land; and that she then executed and delivered to appellant her note for said sum of $792 and interest, payable October 1, 1913, in lieu of said four unpaid notes.

(4) That on October 12, 1914, said Alice Walton and appellant "entered into an agreement for the extension, and extending, the said vendor's lien which was retained in said original four notes, as well as in said note for $792 given ·in renewal of said four notes as aforesaid, and extending further the time of payment of the money represented by said notes to the 1st day of October in the year 1915."

(5) That although said four notes for $110 each, and said note for $792 made in lieu of same, had long been due, said Alice Walton, though often requested to do so, had not paid same or any part of same.

(6) That said agreement extending the time for the payment of said debt was in writing, signed by both appellant and said Alice Walton, "and duly acknowledged as required by law," and was "duly recorded in the proper records of Camp county."

The prayer was for a rescission of the contract whereby appellant sold the land to Alice Walton, and a decree devesting title out of her and the other appellees, and vesting same in appellant, or, in the alternative, for judgment for the amount—principal, interest, and ·attorney's fees—of the debt evidenced by the notes, and foreclosing the vendor's lien retained to secure the payment of the notes.

Demurrers challenging the sufficiency of the petition having been sustained, and appellant having refused to amend same, his suit was dismissed. Thereupon he prosecuted this appeal.

The demurrers sustained were: (1) To the part of the petition charging that Alice Walton executed the renewal note for $792, because it appeared she was then a married woman and that her husband did not join her in the execution of the note. (2) To all that part of the petition charging that Alice Walton made the agreement of October 12, 1914, for an extension to October 1, 1915, of the time of payment of the indebtedness evidenced by the notes, because it did not appear that her husband joined her in the execution of said agreement, and "no facts were alleged which, if true, would have authorized her to execute said ·contract of extension without being joined therein by her husband." (3) To the entire petition, because it appeared that appellant's cause of action was barred by the statute of limitations. Articles 5694, 5695, Vernon's Statutes. This was on the theory that Alice ·Walton was not bound by the renewal note of September 23, 1913, for $792, nor the agreement to extend the time of payment of the indebtedness to October 1, 1915.

T. H. Briggs, of Gilmer, and Smith & Bryson, of Pittsburg, for appellant. Bass & Engledow, of Pittsburg, for appellees.

WILLSON, C. J. (after stating the facts as above). In support of the contention made by appellant that the trial court erred when he sustained the demurrers to the petition and dismissed the suit, it is insisted that "a married woman," quoting from appellant's brief, "since the act of 1913, is authorized to make any contract, without the joinder of her husband, except a contract of joint liability on a note, or of suretyship on a bond or obligation of another."

It is further insisted that, if it is not true that said Act 1913 conferred such power on a married woman, the court nevertheless erred, because it appeared from allegations in the petition that the contracts sued upon were made by Alice Walton for the benefit of her separate estate, and therefore were binding on her; that, if it did not so appear, it did appear from said allegations that at the time Alice Walton made the note for $792 she was living separate and apart from her husband, and for that reason had power to contract as she did; or, if it did not so appear that she was living separate and apart from her husband, it did so appear that she had represented to appellant she was so living and was estopped to deny that she was.

[1] It seems that the act of 1913 referred to (General Laws, p. 61), not only did not confer upon a married woman power she did not before have to contract generally as a feme sole might (Bank v. Ferguson, 192 S. W. 1088; Shaw v. Proctor, 193 S. W. 1104; Bank v. Tinkham, 195 S. W. 880; Aiken v. Bank, 196 S. W. 1017), but deprived her of power she did have before its passage to bind herself by a contract made by her alone for the benefit of·her separate estate (Aiken v. Bank, supra). It seems, therefore, that error of the trial court in ruling as he did cannot be predicated upon power Alice Walton had to contract generally, nor upon allegations in the petition, if there were any, showing that the contracts sued upon were made by her for the benefit of her separate estate. Nor can error of the trial court be predicated upon allegations in the petition showing that Alice Walton and her husband had permanently separated and were living apart from each other; for the petition contained no such allegations.

[2] It follows that if the trial court erred, as complained of, for any of the reasons assigned by appellant, it was because it appeared from allegations in the petition that Alice Walton was estopped from denying that at the time she executed the note for $792 she had not permanently separated from her husband and was then living separate and apart from him. Davis v. Saladee, 57 Tex. 326. The allegations in the petition with respect to this matter were that Alice Walton repre-

sented to appellant "that she and her husband, Cline, were separated and were living separate and apart; that she did not wish him to have, and refused to allow him to have, anything to do with her affairs."

The allegations were not sufficient to show an estoppel against Alice Walton to deny the truth of the representations she was thereby charged with having made to appellant, because, if for no other reason, it did not appear that appellant, being ignorant of the truth about the matter, was induced by a reliance upon the truth of such representations to act in a way he otherwise would not have acted. McLemore v. Bickerstaff, 179 S. W. 537; 10 R. C. L. 148, 149.

The judgment is affirmed.