BENJAMIN et al. v. YOUNGBLOOD et al. (No. 770.)

(Court of Civil Appeals of Texas. El Paso. Dec. 18, 1918. On Rehearing, Jan. 9, 1919.)

HUSBAND AND WIFE ☞156—NOTES OF WIFE —VALIDITY.

Wife would not be personally liable upon notes executed by her in part payment for land conveyed to her, her husband signing the notes pro forma.

Appeal from District Court, Reeves County; P. R. Price, Judge.

Suit by Ella Youngblood and others against Abbie L. C. Benjamin and husband. From the judgment rendered, defendants appeal. Reversed and rendered.

J. W. Parker, of Pecos, and Hutcheson & Hutcheson, of Houston, for appellants.

Howard & Cooke and Ross & Hubbard, all of Pecos, and Jno. H. Cunningham, of San Antonio, for appellees.

HIGGINS, J. On May 1, 1914, J. F. Harbour conveyed to Abbie L. C. Benjamin, the wife of H. W. Benjamin, certain lands, as her separate property. In part payment therefor, she executed promissory notes of even date with the deed. In the execution of the notes her husband joined pro forma. The present suit was brought by the appellees against Mr. and Mrs. Benjamin to recover upon the notes and for foreclosure of lien. A personal judgment was rendered against Mrs. Benjamin for the amount of the notes with foreclosure of the vendor's lien against her and her husband. From this judgment the Benjamins appeal, presenting the proposition that promissory notes executed by a feme covert for the unpaid purchase price of land are not binding upon her and that the

court erred in rendering a personal judgment against her.

The question presented is ruled by the decision of the Supreme Court in the case of Red River National Bank v. J. E. Ferguson et al., 206 S. W. 923, not yet officially reported. Upon the authority of that case, the contention of the appellants is sustained, the judgment of the lower court reversed, and judgment here rendered against Mr. and Mrs. Benjamin in favor of the appellees, foreclosing the latter's lien and ordering the land sold in satisfaction of the amount due the respective appellees upon the notes sued upon; the judgment of this court in all respects to conform to the judgment of the lower court, except that no personal judgment is here rendered against the Benjamins.

Reversed and rendered.

## On Rehearing.

Appellees' motion for rehearing has been carefully considered, and we adhere to the view that under the decision in the case of Red River National Bank v. Ferguson et al. Mrs. Benjamin is not personally liable upon the notes sued upon, and that the personal judgment for the amount of such notes was improperly rendered against her.

The motion for rehearing is therefore overruled, but, in deference to the request of appellee, additional facts are found as follows:

Mrs. Benjamin executed the notes sued upon, the same being ordinary promissory notes; her husband, H. W. Benjamin, signing the same pro forma. The notes were given in part payment for the land conveyed to Mrs. Benjamin by Harbour, the deed reciting that the entire consideration for the land was paid and secured to be paid by Mrs. Benjamin, to wit, $3,500 cash and the execution of the notes sued upon; the notes being described as of even date with the deed and executed by Abbie L. C. Benjamin, and the deed further reciting "the cash payment paid as aforesaid having been paid out of the separate funds of the grantee herein, and the said notes to be paid out of the separate funds and estate of the said Abbie L. C. Benjamin," and that the land was conveyed to Mrs. Benjamin to her own separate estate and use.

Mrs. Youngblood, the plaintiff, testified:

"I am the legal owner and holder of about $9,750 of notes executed by Abbie L. C. Benjamin and her husband, H. W. Benjamin. I had the vendor's lien notes on that land at the time it was sold. I had sold the land to Wellborn, and the notes that Wellborn gave me were taken up by the Harbour notes; then the Harbour notes were taken up by the Benjamin notes. I was here at the time the trade was made between Harbour and Benjamin. I was conversant with the status of affairs, the facts of that trade.

"Mrs. Benjamin purchased this land. The question of whether Mr. Benjamin or Mrs. Benjamin was responsible was discussed, and Mrs. Benjamin signed the notes first, and that she was to pay them. She had an income sufficient to meet those notes as they became due, and Mr. Benjamin, I didn't, of course, look to him for it at all, but I did to Mrs. Benjamin, as she was there, and she signed the notes first and then he signed them. I had a conversation with Mrs. Benjamin in reference to this being her separate property, and she was going to pay for it. We talked it over. She was here, and she had this income every year from some property at Houston, and that she would—she had something like $5,000 every six months, and had something to pay the notes off as they came due. She could pay the notes out of annuities that she received from the estate. That was the understanding at the time the deal was made, and why I agreed to accept their notes in place of the original Harbour notes.

Cross-examination: "I would not have taken the notes if I had not believed they were to be paid out of her separate estate."

The testimony aforesaid, of Mrs. Youngblood, was not controverted.