### HADAD et al. v. ELLISON.   (No. 1285.)

(Court of Civil Appeals of Texas.   Beaumont.
March 8, 1926.   Rehearing Denied
March 17, 1926.)

1. **Judgment** ⬅335(2)—Evidence that plaintiff, seeking to reform default judgment, was in mental and physical distress at time citation was served on her, held to justify finding that her failure to answer was excusable.

In suit to reform a default judgment obtained against plaintiff, evidence that, at time citation was served on plaintiff, she was in much distress mentally and physically by reason of death of her mother, a short time before, and fact that divorce suit between plaintiff and her husband was then in progress, *held* to sustain trial court's finding that plaintiff's failure to answer in such suit was excusable as result of honest mistake.

2. **Judgment** ⬅138(1), 335(2)—Default judgment may be set aside or reformed on proof that failure to appear or answer was due to accident or mistake, and not want of diligence, and that defendant had a meritorious defense.

One, against whom a default judgment has been rendered, may have such judgment set aside or reformed by pleading and proof that

failure to appear was due to accident or mistake, and not the result of want of diligence, and that he had a meritorious defense.

3. Judgment ⬅335(3)—Plaintiff, seeking to reform judgment establishing her personal liability on vendor's lien note and subjecting her separate estate to its payment, held to have proved meritorious defense by showing that, when note was executed and judgment rendered, she was under coverture.

Plaintiff, seeking to have default judgment establishing her personal liability on vendor's lien notes, executed by herself and husband, and subjecting her separate estate to its payment, set aside, *held* to have proved a meritorious defense by showing that she was under coverture when note was executed and judgment rendered.

4. Husband and wife ⬅156—Execution by married woman of note as part of purchase money for land does not make her liable personally, or her separate estate liable for its payment.

A married woman's note, executed as part of purchase money for land, does not make her liable personally on note, or make her separate estate liable for its payment, even though deed conveying land on its face puts title in her as her separate estate.

5. Judgment ⬅335(3)—Evidence, in suit to reform judgment obtained against married woman, held to sustain finding that property levied on was in fact plaintiff's separate property, and hence not subject to payment of judgment.

In suit to reform judgment obtained against married woman, evidence *held* to sustain finding that property levied on was in fact plaintiff's separate property as claimed by her, and hence not subject to payment of judgment.

6. Judgment ⬅878(2)—Defendant, permitting judgment to be rendered against him, thereafter pays it off and takes assignment of it, he thereby discharges and extinguishes it.

Where a party defendant in a suit permits a judgment to be rendered against him establishing his liability primarily, and he thereafter pays it off and takes assignment of it, he thereby discharges and extinguishes it, though it may not be his intention that his payment shall have such effect.

Appeal from District Court, Jefferson County; J. D. Campbell, Judge.

Consolidated actions by Mrs. H. Ellison against Sam Louis Hadad and others. Judgment for plaintiff, and defendants appeal. Affirmed.

A. D. Lipscomb, of Beaumont, for appellants.

Jas. A. Harrison, of Beaumont, for appellee.

HIGHTOWER, C. J. The appellants Sam Louis Hadad and others prosecute this appeal from a judgment of the district court of Jefferson county (Sixtieth district) in favor of the appellee, Mrs. H. Ellison, reforming a certain judgment in another cause in which Mrs. Ellison was one of the defendants, and by the provisions of which a personal judgment was rendered against her, and the present judgment also makes permanent a temporary injunction that was granted upon the petition of Mrs. Ellison enjoining the sale of certain property claimed by her as her separate estate to satisfy the personal judgment against her in the other cause. The facts underlying this controversy may be stated as follows:

On February 6, 1922, Sam Louis Hadad conveyed by deed to Mrs. H. Ellison four certain tracts of land in Jefferson county, aggregating about 134 acres; the recited consideration being $9,000, $4,000 of which was recited to be cash, and the balance was evidenced by three vendor's lien notes. The deed recited that the land was conveyed to Mrs. Ellison for her sole and separate use and benefit and that the consideration was paid out of her separate means. The deed expressly retained the vendor's lien, and the three notes were signed by both Mrs. Ellison and J. I. Ellison, who was then her husband.

Shortly after the execution and delivery to him of the three vendor's lien notes, Hadad indorsed and transferred them to John Cashen and James Donohoe, and when the notes became due they were not paid, and Cashen and Donohoe brought suit on them against J. I. Ellison and Mrs. H. Ellison and Sam Louis Hadad, praying for judgment on the notes and for foreclosure of the vendor's lien on the 134 acres of land. The number and style of that suit was 21669, John Cashen et al. v. J. I. Ellison et al., which we will hereinafter designate as cause No. 21669.

Though all the defendants in cause No. 21669 were duly served with citation, none of them filed any answer or in any manner appeared, and the plaintiffs Cashen and Donohoe had judgment by default against each and all of the defendants J. I. Ellison, Sam Louis Hadad, and Mrs H. Ellison, jointly and severally, for the amount of the three vendor's lien notes, which was, in the aggregate, including principal, interest, and attorney's fees, $6,222.39, and the judgment further foreclosed the vendor's lien, as prayed in that suit. The date of the judgment was October 2, 1923.

After the judgment in cause No. 21669 had become final, the plaintiffs Cashen and Donohoe caused an order of sale to be issued under it, commanding the sheriff of Jefferson county to sell the 134 acres of land against which the vendor's lien was foreclosed, to satisfy that judgment, which was at that time still owned by Cashen and Donohoe. The order of sale fully described the judgment in that cause and gave the names of all the parties to it, including the name of Mrs.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

H. Ellison. Thereafter, in due time, a notice of the order of sale was served upon the defendants in that cause, including Mrs. H. Ellison, but this notice of sale did not show that Mrs. H. Ellison was a party to that judgment, or that any character of judgment had been rendered against her in that cause.

It does not appear from the record in this case that any of the defendants in cause No. 21669 paid any attention to the notice of sale, and the 134 acres of land were sold by the sheriff, as advertised, and it was bought in by Cashen and Donohoe for $500, which was credited upon the judgment, and the sheriff made a deed to Cashen and Donohoe conveying them the land.

Thereafter Cashen and Donohoe caused an execution to be issued under the judgment in cause No. 21669, to satisfy the unpaid balance of that judgment, and that writ was levied upon certain property owned by Hadad in the city of Beaumont, and also upon certain lots and other property owned or claimed to be owned by Mrs. H. Ellison.

When Mrs. Ellison learned of the levy of the execution upon the property claimed by her, she applied to the judge of the Sixtieth judicial district for a writ to stop the sale of her property under the writ, and a temporary writ of injunction was granted and the sale prevented.

When Hadad learned that his city property was levied on to satisfy the balance due Cashen and Donohoe on the judgment in cause No. 21669, he, too, sought legal advice, with a view to preventing the sale of his city property. Hadad then went to one Deeb E. Shaboub, a fellow countryman of his, to borrow money with which to pay off the judgment still held by Cashen and Donohoe, and he did borrow $7,500 from Shaboub, and made his note to Shaboub for that amount. In order to secure the payment of the note, it was agreed and understood between Shaboub and Hadad that, when the balance due to Cashen and Donohoe on the judgment in cause No. 21669 should be paid, they (Cashen and Donohoe), were to execute a deed to Shaboub for the 134 acres of land conveyed to them by the sheriff under the order of sale in cause No. 21669, and it was also agreed between Shaboub and Hadad that Cashen and Donohoe were to transfer and assign to Shaboub the judgment held by them in that cause, and it was also understood by Hadad and Shaboub that Hadad, to further secure the payment of the $7,500 note, would execute a deed of trust in favor of Shaboub covering certain property owned by Hadad in the city of Beaumont.

On the 1st day of January, 1924, the day set for the sale of Hadad's city property, under the writ of execution, Cashen and Donohoe did execute a deed to Shaboub conveying to him the 134 acres of land which they had purchased at the sheriff's sale in cause No. 21669, for the recited consideration of $6,422.43. At the same time, Cashen and Donohoe, by a formal instrument in writing, transferred and assigned to Shaboub the judgment which they held against all the defendants in cause No. 21669, and this instrument also recited a cash consideration of $6,422.43, which was the amount of unpaid balance of the judgment at that time.

On the same day that Cashen and Donohoe executed to Shaboub the deed for the 134 acres of land, and transferred and assigned to him the judgment in cause No 21669, he (Shaboub) executed a deed to Hadad, conveying to him the same 134 acres of land. The recited consideration for this deed was the execution and delivery by Hadad to Shaboub of Hadad's promissory note for $7,500, payable one year thereafter, with 8 per cent. interest, and attorney's fees. And thereupon and at the same time Hadad executed and delivered to Shaboub a deed of trust covering the 134 acres of land, and also certain other property owned by Hadad in the city of Beaumont. This instrument recited that it was executed to secure the payment of the $7,500 note.

After filing her original petition for injunction to prevent the sale under execution of her property to satisfy the unpaid balance due Cashen and Donohoe of the judgment in cause No. 21669, Mrs. Ellison filed another suit in the same court, and in which she made a direct attack on the judgment in cause No. 21669, in so far as that judgment was against her personally, or made her separate estate liable for its payment, and she prayed that that judgment be set aside and reformed, in so far as it was a personal judgment against her and subjected her separate property to its satisfaction. By the petition in this last suit, all necessary parties were made, and, in fact, all essential elements to a direct attack on the judgment in cause No. 21669 were present.

The grounds for this direct attack on the judgment in cause No. 21669, stated in substance, were:

(1) That Mrs. Ellison was not personally liable on the vendor's lien notes sued on by the plaintiffs Cashen and Donohoe in cause No. 21669, because at the time of the execution of those notes she was a married woman and under coverture, and because at the date of the judgment in that cause she was a married woman and under coverture, and in that connection she alleged that the vendor's lien notes were not executed for necessaries for herself or her children, nor were they executed for the benefit to or improvement of her separate estate.

(2) That the default judgment rendered against her in cause No. 21669, establishing personal liability against her and subjecting her separate estate to its payment, ought to be set aside and reformed to the extent prayed by her, because her failure to appear and answer in that cause was the result of an accident and mistake, and she fully pleaded

the facts in that connection upon which her claim of accident and mistake was predicated, and these pleaded facts will sufficiently appear in our statement of the trial court's findings of fact.

(3) That, when Shaboub loaned to Hadad the money with which to pay off and discharge the unpaid balance due on the judgment held by Cashen and Donohoe in cause No. 21669, and took Hadad's note therefor, secured as we have shown above, and the other deals as we have stated them, it was with the agreement and understanding between Shaboub and Hadad that Shaboub was to hold the judgment assigned to him by Cashen and Donohoe merely as a trustee, and for the use and benefit of Hadad, and with the further understanding that they would cause execution to be levied upon Mrs. Ellison's property and sale thereof made, and all proceeds of such sales would be credited upon the $7,500 note given by Hadad to Shaboub until the same should be fully paid, and that Shaboub would then formally transfer the judgment to Hadad.

Mrs. Ellison then alleged, in substance, that such dealings, transactions, understandings, and agreement between Shaboub and Hadad constituted an extinguishment of the judgment in cause No. 21669 by Hadad, one of the defendants in that cause who was primarily liable, both jointly and severally, as recited by that judgment.

(4) That all the property levied on under the alias execution was Mrs. Ellison's separate property.

(5) That the lots described in her petition near the city of Beaumont, and which were levied on under the alias execution, constituted her homestead; she being the head of a family in legal contemplation.

This direct attack was answered by all the appellants by a general demurrer, a number of special exceptions, general and special denials, and also by other allegations which, in view of the questions before us, need not be further stated.

Upon the trial below, the injunction suit filed by Mrs. Ellison and her suit making the direct attack on the judgment in cause No. 21669 were consolidated by agreement of all parties and thereafter prosecuted to judgment as one suit.

The case was tried to the court without a jury, and the court rendered judgment in favor of Mrs. Ellison reforming the judgment in cause No. 21669, as prayed by her, and making permanent the temporary writ that was granted in the injunction suit against the sale of her separate property under the alias execution, and from this judgment all defendants in the consolidated cause have prosecuted this appeal.

Appellants attack the trial court's judgment by a number of assignments of error and propositions, but some of these only present the same legal point in different form, and we shall not discuss them in the numerical order in which they are presented, but what we shall say will have the effect to dispose of them all.

The trial court filed findings of fact and conclusions of law, and there is also a full statement of facts in the record. One of the main contentions made by appellants is, in substance, that the evidence adduced upon the trial was insufficient to entitle appellee, Mrs. Ellison, to have the judgment in cause No. 21669 reformed, as was done by the court in this case. Able counsel for appellant contend in this connection that the evidence was insufficient to show any reasonable excuse for appellee's failure to answer in cause No. 21669, and there assert such defenses, if any, as were available to her, and that, therefore, the trial court was in error in reforming that judgment, as prayed by her in this cause.

[1] The trial judge's findings of fact upon which he based his legal conclusion that Mrs. Ellison's failure to answer in cause No. 21669 was excusable, in that her failure was the result of an honest mistake, was as follows:

"I find that in cause No. 21669, in which John Cashen and James Donohoe were plaintiffs and Sam Louis Hadad, J. I. Ellison, and Mrs. H. Ellison were defendants, citation was served by Artie Pollock, deputy sheriff, on Mrs. H. Ellison on the 15th day of June, 1923; that said citation was served by handing same to Mrs. H. Ellison while she was in the Fifty-Eighth district courtroom of Jefferson county, Tex., and while a divorce suit brought by Mrs. H. Ellison against J. I. Ellison was on trial before a jury. Mrs. H. Ellison, on being handed said citation, did not read same, and did not know what it was, but immediately then and there handed same to her attorney, A. L. Shaw. Later on in the day Mrs. H. Ellison asked A. L. Shaw, her lawyer, what the paper was that she handed him, and he replied, 'It don't amount to anything,' and Mrs. H. Ellison told him to look after it for her, and she thought he would look after it and give it proper attention, and thought he was her attorney in the matter.

"I find that A. L. Shaw was then acting as attorney for Mrs. Ellison in the divorce suit, and also a suit brought against her and J. I. Ellison by the Beaumont Irrigation Company in a suit to recover water rent and foreclose the statutory water lien on a rice crop, and that said attorney, A. L. Shaw, has no recollection of being handed said citation, and did not think or understand that he was employed as attorney by Mrs. H. Ellison to represent her as attorney on same, and did not advise Mrs. Ellison about the nature and effect of said citation, and did not file any answer for her in cause No. 21669, for the reason that he did not understand that he was to act as her attorney therein, or that he was employed by her in said matter.

"I find that when said citation was delivered to Mrs. H. Ellison on June 15, 1923, in cause No. 21669, that the said Mrs. Ellison was engaged in the trial of her divorce suit against J. I. Ellison, which resulted in a mistrial, and that said Mrs. H. Ellison, at the time, was laboring under great mental distress, and was distressed and harassed and ill, and on account

of her mental and physical condition was not capable of attending to her affairs, which condition existed for months thereafter, and I find that Mrs. H. Ellison did not actually know that the paper served on her on said occasion was a citation, and did not know that she was a party to cause No. 21669, or that any personal judgment was sought against her, or that any judgment had been recovered against her therein until some time in August, 1924."

In addition to this finding by the trial court, the record reflects that Mrs. Ellison's mother had died a few months prior to the time she was served with citation in cause No. 21669, and the evidence of several witnesses who testified on the trial was sufficient to show, if given credence, that Mrs. Ellison, at the time she was served with citation in that cause, as well as for several months preceding, was in much distress and physically sick on account of the loss of her mother by death and the infelicity that had arisen between herself and husband, which had resulted in the divorce proceeding. This evidence tended to show that Mrs. Ellison, during such period of time and up to the trial of the divorce suit, and for considerable period after, was very nervous, and some nights slept hardly any, and required the attention and assistance of a nurse.

Now appellants vigorously attack the above finding of fact by the trial court, but we have concluded that that finding is sufficiently supported by evidence in this record, and that we are not authorized to disregard it, and upon that finding the trial court held that Mrs. Ellison showed a reasonable excuse in equity for the reformation of the judgment against her in cause No. 21669, and we approve that holding.

[2] It now seems to be settled in this state by our appellate courts that one against whom a default judgment has been rendered may, at a subsequent term of the court, in a proper proceeding for the purpose, have that judgment set aside or reformed by pleading and proof that the failure to appear or answer was due to accident or mistake, and was not the result of a want of diligence on his part, and that he had a meritorious defense to the cause of action asserted against him. Jones v. Wootton, 228 S. W. 142, and authorities there cited; Watson v. Newsham, 17 Tex. 437.

[3, 4] The next question is: Did appellee allege and prove that she had a meritorious defense to the cause of action asserted against her in cause No. 21669? As we have already shown, she, along with Hadad and J. I. Ellison, her husband at that time, was sued on a vendor's lien note executed by herself and husband as part of the purchase money for the 134 acres of land that was at that time conveyed by Hadad to Mrs. Ellison. She was under coverture at the time of the execution of the note, and was still under coverture at the time judgment in that cause was rendered against her, establishing her personal liability on the vendor's lien notes, and subjecting her separate estate to its payment. Had she filed an answer, and interposed as a defense to the cause of action there asserted against her by the plaintiffs, her coverture, the trial court could not correctly have refused to sustain that defense. It has long been the rule in this state that a married woman's note executed as part of the purchase money for land does not make her liable personally on the note, or make her separate estate liable for its payment. Noel v. Clark, 60 S. W. 356, 25 Tex. Civ. App. 136; Benjamin v. Youngblood (Tex. Civ. App.) 207 S. W. 687; Aiken v. Thompson (Tex. Civ. App.) 196 S. W. 625; Givens v. Davis (Tex. Civ. App.) 227 S. W. 367; Red River Nat. Bank v. Ferguson, 206 S. W. 923, 109 Tex. 287. And this is so even where the deed conveying the land upon its face puts the title in the married woman as her separate estate.

[5] The trial court in this case found as a fact that the property levied upon by the sheriff under the alias execution, sale of which was enjoined at Mrs. Ellison's suit, was, in fact, her separate property, as claimed by her, and that it could not be subjected to the payment of the judgment in cause No. 21669. Appellants have attacked that finding of fact as being wholly without support in the evidence. The record shows in this connection that most of this property claimed by Mrs. Ellison as her separate estate was purchased by her many years before the execution of the vendor's lien notes on which she was sued in cause No. 21669, and the deeds to this property expressly recited that the land was conveyed to Mrs. Ellison for her sole and separate use and benefit, and was paid for out of her separate means. This, of course, on the face of the deeds, made the land the separate estate of Mrs. Ellison, and it was incumbent in this suit upon appellants to prove the contrary, and their counsel take the position that they met that burden. We cannot agree with that contention, because the only affirmative evidence, in addition to the recitation in these deeds on this point, was that of Mrs. Ellison herself, and according to her evidence, this property was paid for out of her own separate means, and was her separate property, as recited in the deed. The learned counsel for appellants contend in this connection that the evidence showed conclusively that Mrs. Ellison and her husband, J. I. Ellison, had a system under which all property acquired by them during marriage was taken in the name of Mrs. Ellison, as it was, with the understanding that she was holding the legal title in trust for the community, and that the trial court should have so held. We cannot say that the facts and circumstances in this record compel such a finding and holding by the trial court, and therefore we are not authorized to disturb the

trial court's conclusions on this point, and must overrule appellants' contention.

[6] The trial court in this case, in connection with the appellee's contention that the judgment in cause No. 21669 was extinguished, made the following findings of fact:

"On December 4, 1923, the sheriff of Jefferson county, under an order of sale issued in cause No. 21669, sold at public sale the said 134 acres upon which foreclosure was ordered in said judgment, and that John Cashen and James Donohoe, plaintiffs in that judgment, purchased said 134 acres at said sheriff's sale for the sum of $500, which was not paid in cash, but credited on the judgment.

"Thereafter, on the 1st day of January, 1924, the said John Cashen and James Donohoe conveyed said 134 acres of land to Deeb E. Shaboub for the amount then due under said judgment, which amount was paid in cash to said Cashen and Donohoe, and said Cashen and Donohoe at the time transferred and assigned the judgment in cause No. 21669 to Shaboub.

"Thereafter, on January 1, 1924, the said Deeb E. Shaboub conveyed said 134 acres of land to said Sam Louis Hadad in consideration of the note for $7,500, due January 1, 1925, secured by vendor's lien on said 134 acres, and also a deed of trust on said 134 acres, and other real estate in the city of Beaumont, and that said 134 acres of land, the subject of foreclosure in cause No. 21669, is now owned and held by said Sam Louis Hadad, against whom judgment was rendered in cause No. 21669.

"I find that Deeb E. Shaboub purchased said land and judgment from said Cashen and Donohoe at the instance of the defendant Sam Louis Hadad, and that, when said Hadad purchased said 134 acres and gave his note for $7,500 therefor, secured by a vendor's lien and deed of trust as aforesaid, it was with the understanding and agreement between said Shaboub and Hadad that said judgment should be held by Shaboub for the use and benefit of the defendant Sam Louis Hadad, and the arrangement was then made between them that an effort would be made to levy on and sell the property of Mrs. H. Ellison, and that any amount realized in such proceeding should be for the benefit of said Hadad and be credited on the note for said $7,500, and that said Shaboub was holding said judgment for the use and benefit of and in trust for said Sam Louis Hadad.

"I find that in the judgment in cause No. 21669 rendered on October 2, 1923, the issue of suretyship or primary and secondary liability was not made an issue or determined, and that in said judgment Sam Louis Hadad, J. I. Ellison, and Mrs. H. Ellison are joint defendants, and that judgment was rendered against them and each of them, jointly and severally, for the sum of $6,222.39, with foreclosure of vendor's lien on said 134 acres of land."

Upon these findings of fact just quoted, the trial court concluded as a matter of law that the acts and agreements between Shaboub and Hadad had the effect to extinguish and satisfy the judgment in cause No. 21669.

Now, appellants, by proper assignments and propositions, assail the trial court's findings of fact next above quoted in this connection, and also the conclusions of law that the judgment in cause No. 21669 was extinguished. No useful purpose would be served by our detailing the evidence as a whole upon which these findings of fact were made. Suffice it to say that there was sufficient evidence, if given credence by the trial judge, to warrant the finding by him that the judgment in cause No. 21669 was transferred and assigned to Shaboub and held by him, with the understanding between him and Hadad that Mrs. Ellison's property should be levied upon and sold for its satisfaction and payment, and that all such proceeds should be applied by Shaboub to the payment of the $7,500 note of Hadad, and that, in fact, and in legal contemplation, Shaboub was holding the judgment merely in trust for Hadad's benefit. If such were the true facts, then we think that the trial court was warranted in concluding as a matter of law that the judgment was extinguished as held by him. It seems to be the law in this state, that where a party defendant in a suit permits a judgment to be rendered against him establishing his liability primarily, and he thereafter pays off the judgment and takes an assignment of it to himself, he thereby discharges and extinguishes the judgment, although it may not be his intention that its payment by him shall have such effect. Tarlton v. Orr, 40 Tex. Civ. App. 410, 90 S. W. 534 (writ of error refused); Deleshaw v. Edelen, 31 Tex. Civ. App. 416, 72 S. W. 413.

We have not overlooked the proposition made by counsel for appellants in this connection that this rule has no application where the judgment is paid off by a stranger to the judgment and the assignment and transfer taken by him. Abstractly speaking, counsel's contention is correct, but if, as found by the court, Shaboub in this transaction was acting for the use and benefit of Hadad in taking the judgment in his name, and with the understanding as found by the court that it was to be held in trust for the benefit of Hadad and satisfied by sales of Mrs. Ellison's property and Hadad's $7,500 note to Shaboub credited with such proceeds, and the judgment thereafter to be turned over to Hadad, it cannot be said that Shaboub was a stranger to the judgment, and that as such he purchased and held the judgment. If the relation between him and Hadad was as found by the court, the legal effect of the transaction would be the same as if Hadad, being primarily liable as established by the judgment, had purchased it in his own name.

Another contention made by counsel for appellants is that Mrs. Ellison was not entitled to equitable relief that she secured in this case, because she should have prosecuted her legal remedy by suing out a writ of error after she discovered the rendition of the judgment against her in cause No. 21669. The abstract legal proposition is sound, but the facts in this case were sufficient to show,

if, indeed, they did not conclusively show, that Mrs. Ellison was not aware of the judgment against her in cause No. 21669, or that she was even a party to that suit until it was too late to sue out a writ of error in that cause.

What we have said above disposes of all contentions made by appellants as we see them, and, being of the opinion that none of them point out reversible error, the trial court's judgment should be affirmed, and it has been so ordered.