### JESSE H. JONES & CO. v. BLACK et al.
### No. 9552.

Court of Civil Appeals of Texas. Galveston. June 23, 1931.

Rehearing Denied Sept. 24, 1931.

Huggins, Kayser & Liddell, Cooper K. Ragan, and Chas. Reinhard, all of Houston, for appellant.

Clarence Kendall and Wayne C. Depew, both of Houston, for appellees.

PLEASANTS, C. J.

This is a suit by appellant against the appellee Dr. Lela M. Black and her husband, H. H. Black, to recover the balance due upon a written contract of lease by plaintiff to the defendant of office space in an office building in the city of Houston owned by the plaintiff.

The following sufficient statement of the pleading is copied from appellant's brief:

"Plaintiff alleged that defendant, Dr. Lela M. Black, was a married woman and a licensed and practicing dentist, and that this contract was entered into by her for the benefit of her separate estate for the purpose of enabling her to practice her profession of dental surgery, and that the use of the leased office was necessary for the practice of her profession. Plaintiff further alleged in the alternative that Dr. Lela M. Black entered into said contract for the benefit of the community estate as agent of her husband, defendant H. H. Black, one of the appellees herein, and that he gave his implied consent thereto and had knowledge of the contract and acquiesced therein, and that he and the community estate received benefits therefrom whereby the community estate and defendant, H. H. Black, became liable. Plaintiff further alleged that the term of said contract for office space was from July 1, 1924, until June 30, 1927, and that defendant, Dr. Lela M. Black, used and paid for the premises up to December 1, 1926, at which time she removed therefrom with all of her furniture and fixtures, and breached her contract on which there remained a balance due of $383.00 with interest, and $50.00 reasonable attorney's fees.

"The defendants answered by general demurrer, special exceptions, general denial, a special sworn plea denying the agency of defendant wife, Lela M. Black, for the husband, defendant H. H. Black; a special plea of coverture of the wife, defendant Lela M. Black, and a special plea of constructive eviction.

"At the trial plaintiff filed its trial amendment, alleging further that defendant Lela M. Black had personal earnings as well as rents, revenues, and incomes from her separate property, and that the contract sued on was in regard to that class of property as well as her separate estate, joining defendant H. H. Black pro forma in regard thereto."

The trial in the court below without a jury resulted in a judgment in favor of the defendants.

The appeal presents no fact issue.

The contract upon which the suit is based was executed by Mrs. Black, as alleged in the petition, and she occupied and paid the rent for the office space furnished her by the appellant up to December 1, 1926, when she moved out, taking all her furniture, fixtures, and dental tools with her, and has not paid any of the subsequent rentals accruing under the terms of the lease contract. At the time she made the contract she and her husband, H. H. Black, were married and living together as husband and wife, and that relation has continued uninterrupted since their marriage a year or two prior to the date of the contract. After her marriage she educated herself as a dentist and obtained a license from the state to practice her profession. The cost of her education was paid by her out of money saved from monthly allowances made her by her husband out of his earnings, and by her personal earnings as assistant instructor in the Dental College. She obtained her license in July, 1921, and has been practicing her profession since that time. She testified: "I have been practicing my profession for a number of years, here in Houston. During the time I have practiced my profession here in Houston, as a dentist, I was a married woman. I married before I left the Dental College, before I received my education. My husband does not know anything about what I buy for my dental office. My husband does know, of course, that I am practicing dentistry; he knows that I have to buy material and equipment, et cetera; he does know that I have to rent office space, but I never consult him at all when I enter into such contracts. He has never forbidden me to do that. I have never come into the court over here and gotten an order removing my disabilities as a married woman. I look upon myself as fully capable of carrying on my business as any man. I did not, in signing this lease, tell Mr. Heinie that I was a married woman. I go about this in the same manner as a man ordinarily would; I attend to my own affairs; I manage my own business affairs. I keep the money I earn separate and apart from my husband's, separate bank accounts, et cetera. * * * It is money that I derive from my profession that I re-invest in equipment, to replenish my office, everything pertaining to my dental office."

The defendant H. H. Black testified: "I know my wife is practicing dentistry. * * * I did not know that Dr. Black, my wife, had a contract which is the basis of this suit until I was served with citation. I am not familiar with her business. I know she is in the dental business, but as far as her bills, or anything like that, I do not know anything about it. I do not suppose I have been in her office a dozen times since she has been practicing dentistry; I went there then to get some dental work done. * * * She never gives me any of the money that she makes out of her dentistry practice, not a penny. I do not even know what bank she keeps it in, if she has got any."

Appellant bases this appeal upon the proposition very earnestly and forcibly presented in his brief and oral argument that: "Whenever a married woman conducts a dental business with an education and dental license acquired by her own efforts with funds given her and with her personal earnings received as an instructor at college, coupled with her knowledge, skill and ability which she has acquired and thereafter acquires, whereby she practices her dentistry profession without aid and assistance from anyone, with the knowledge and consent of her husband, and acquires dental equipment with the earnings from such occupation, and keeps the income in her name in separate bank accounts and never gives any earnings from her profession to her husband or the community, and no funds or accounting are ever demanded of her and all said funds from her profession are kept by her continuously without any objection, and the husband consents and relinquishes all control and command over her in said business and never interferes with her business, giving her full control and management. and he never acquaints nor attempts to acquaint himself therewith, and she keeps, purchases. and handles, as stated, all the equipment, funds and property of said dental profession in her own name she has, as a result thereof, a separate estate." And upon the further contention that the undisputed evidence showing that the contract sued upon was executed by her for the benefit of such separate estate, she was authorized to execute it without being joined by her husband, and such contract is valid and enforceable against her and her separate estate.

In support of this contention appellant largely relies upon the case of Cauble v. Beaver-Electra Refining Co., 115 Tex. 1, 274 S. W. 120. As stated in the able opinion of Justice Greenwood in the case cited, the question presented and decided by the court was "the right of a married woman to bind herself by a contract incidental to the management of her separate property or of community property committed to her sole management, control, and disposition." The facts of the case show that the wife engaged in the oil business upon her separate account by an arrangement with her husband whereby the profits she would make therefrom were to belong to her personally. She first began business as a broker, making about $48,000 in commissions. With this money she began to buy and sell oil leases, and also bought and operated drilling rigs and machinery. She operated these rigs upon her own leases and also upon

leases owned by other parties. While so engaged in operating her drilling machinery and for the purpose of operating same, she purchased from Beaver-Electra Refining Company operative fuel oil of the market value of $4,452.58. The wife, S. O. Cauble, and husband, H. F. Cauble, were sued for the value of this operative fuel oil; it being alleged that she had a separate estate and also that she purchased said oil for the partnership of herself and husband and in so doing was acting for her separate estate and her husband and that each of them and the separate estate of S. O. Cauble became liable. The trial court rendered judgment for the plaintiff against Mrs. Cauble alone. In affirming the judgment the Supreme Court says:

"The claim is also made that a married woman engaged on her own account in the oil business cannot bind herself by an enforceable contract to purchase and pay for fuel oil used in the course of such business. It is true Mrs. Cauble was engaged in the business of buying and selling oil leases. She had not been granted the general right to make contracts in relation thereto, and could not do so and thereby bind herself personally. However, the fact that she was engaged in a trading business did not deprive her of the exclusive power given her by statute to manage and control either her separate property and estate, or her personal earnings, and to make such contracts as were proper or necessary to such exclusive management and control. Notwithstanding she was engaged in the oil business without the power to make contracts generally, yet she was clothed with the same power to make contracts in the management and control of her separate property and her personal earnings, as was a married woman not engaged in such business. The mere fact that she so managed and controlled such property as to increase such business, or in aid thereof, would not deprive her of the right to make these contracts of purchase. The law gives her the exclusive right to manage and control. There is nothing to indicate that she would be required to allow this property to deteriorate by nonuse, or that she was to be restricted in her management and control, so as not to allow such property to be put to a use which would aid her in her trading business. Mrs. Cauble testified that she purchased these rigs with money she earned from commissions, and that she contracted to buy this fuel oil to operate her own rigs. The fact that she used some of the oil to operate a rig not owned by her would not release her from liability; same having been purchased for use in operating rigs owned by her."

We do not think this opinion supports appellant's contention. The right of a married woman to make necessary contracts incidental to the protection, preservation, management, control or disposition of her property, or of her separate earnings, or property acquired therewith over which she has control, is the only question decided in the Cauble Case. We cannot agree with appellant's counsel that the facts of this case present the question decided in the cited case. The only property of Mrs. Black incidentally affected by the lease contract was her dental tools and office furniture, and it certainly cannot be held that the lease contract was necessary for the protection, preservation, or management of this property in the sense that oil was necessary for the protection, preservation, and management of the drilling rigs owned and operated by Mrs. Cauble.

It is, we think, clear from the undisputed evidence in this case that Mrs. Black's contract for the lease for three years of office space in appellant's building was made for the sole purpose of facilitating her practice of her profession, and not to protect, preserve, or manage her separate property. If she has the power to make a contract of this kind, she is no longer under the general disability of coverture.

Our courts have uniformly held that this disability still exists for the protection of married women. Dickinson v. Griffith Lumber Co. (Tex. Civ. App.) 213 S. W. 341; Hadad v. Ellison (Tex. Civ. App.) 283 S. W. 193; Poe v. Hall (Tex. Civ. App.) 241 S. W. 708; Red River National Bank v. Ferguson, 109 Tex. 287, 206 S. W. 923; Taylor v. Hustead & Tucker (Tex. Com. App.) 257 S. W. 232, 233; Whitney Hardware Co. v. McMahan, 111 Tex. 242, 231 S. W. 694.

Our Supreme Court in the Cauble Case, as shown in the quotation before set out, expressly denies the general power of a married woman to bind herself personally, or to bind her separate estate by contracts incidental to any business enterprise in which she may engage.

We think the judgment should be affirmed, and it has been so ordered.

Affirmed.