## BORDERS et al. v. MORAN et ux.

### No. 3842.

Court of Civil Appeals of Texas. Amarillo.

June 8, 1932.

Marshall & Perkins, of Quanah, for appellants.

O. L. Bell, of Quanah, for appellees.

JACKSON, J.

The plaintiffs, E. Moran and wife, Mintie Moran, instituted this suit in the district court of Hardeman county against the defendants, Richard B. Borders and wife, Ruby Grigsby Borders, to recover the sum of $700 alleged to be due the plaintiffs by the defendants on a lease contract.

The plaintiffs alleged that about October 29, 1928, by written lease, they rented to the defendants for a period of five years certain improved property fully described, for the sum of $6,000, of which amount $1,200 was due on November 1, 1928, and the balance was due in monthly installments of $100, payable on the 1st of each month after November 1, 1929, during the life of the lease. To the petition the plaintiffs attached as a part thereof a copy of the lease contract.

The petition supplemented by a trial amendment filed, alleged that the contract was made by Ruby Grigsby Borders, joined by her husband, for the benefit, protection, and preservation of her separate estate, and was necessary to her in the operation of her business; that the building was rented for storing implements and bakery articles which were the separate property of Ruby Grigsby Borders; that such bakery equipment belonged to her separate estate before she married Richard B. Borders; that immediately after the execution of the contract she stored said equipment in the rented building, and has since kept said equipment or a part thereof stored in said building.

The defendant Ruby Grigsby Borders answered by general demurrer, general denial, numerous special exceptions; pleaded her coverture; that her disabilities as a married woman had never been removed; that she had never been declared a feme sole for mercantile purposes; that the building was rented for the purpose of subletting it to others to be used for mercantile and storage purposes; that such premises were never used or occupied by her or her husband for any purpose or business, but was sublet to others, which, under the provisions of the contract, the defendants were authorized to do; that the contract of the defendants provided that, in the event of their default, the plaintiffs were authorized to re-enter the premises and relet same for the remaining period of the

rental contract; that the defendants have not used the premises for any purposes or sublet the same since May 1, 1931; that the plaintiffs did take possession and relet said premises which are now occupied by a tenant to whom the plaintiffs rented the premises and delivered possession; and that defendants are entitled to have such rental value of such premises offset and credited upon any judgment against them.

The defendant Richard B. Borders answered by general demurrer, general denial, and pleaded that the premises were rented to his wife Ruby Grigsby Borders, and in truth and in fact she is and was the sole lessee, and that, while he executed the lease, it was solely in a pro forma capacity and not in his individual capacity as a joint lessee. He adopted in its entirety the answer of his wife, Ruby Grigsby Borders.

The case was submitted to the court without the intervention of a jury, and judgment rendered that the plaintiff recover of the defendant Ruby Grigsby Borders a personal judgment for $650 to be made out of her separate property, and that Richard B. Borders go hence without day, from which judgment Ruby Grigsby Borders, joined pro forma by her husband, Richard B. Borders, prosecutes this appeal.

██ The record discloses that the appellant Ruby Grigsby Borders and her first husband, John Grigsby, during his lifetime, owned and operated the Bon Ton Bakery in the city of Quanah; that her said husband died in October, 1927, intestate, leaving the appellant and the two minor children of himself and appellant surviving him; that she was appointed community administratrix of the estate of herself and John Grigsby, which was estimated at the value of $13,400; that the machinery and supplies of the Bon Ton Bakery were of the value of $4,000; that before the execution of the rental contract in controversy the appellant was married to Richard B. Borders, who joined her in the execution thereof; that the contract in question was executed on the 29th day of October, 1928, by the terms of which, necessary to a disposition of this appeal, the plaintiffs leased to the defendants the property in controversy for a period of five years, "to be occupied as storage and mercantile purposes and not otherwise" for the sum of $6,000, $1,200 to be paid on November 1, 1928, and the balance in monthly payments of $100, beginning November 1, 1929; that the defendants should have the right and privilege of subletting and subleasing the property or any part thereof to any person, firm, or corporation, satisfactory to the lessees for the purposes covered by the lease, without the consent of the lessors.

The record does not disclose whether the defendants or either of them ever occupied the building for mercantile purposes, but it appears that on the 1st of January, 1929, the defendants subleased the property by written contract to J. W. Dalton and C. M. Colbert; that on January 23, 1930, the defendants subleased the property to the Porter Worley Company; that the appellant paid the rental as provided for in the contract with the plaintiffs up to and including the month of April, 1931, but that the defendants had paid no rent for the months of May, June, July, August, September, October, and November, 1931; that the negotiations leading to the execution of the contract were had between Mrs. Mintie Moran and Mrs. Ruby Grigsby Borders; and that the husband of each joined her in the execution of the contract.

Mrs. Moran testified that before the execution of the contract "she" (appellant) "told me she was going to use the back end of the building for storage for her bake shop and was going to rent the front to a friend for a gift shop. She wanted to store all kinds of stuff for her bakery"; that "she usually paid about $60.00 per month for storage."

Mr. Moran testified that, since the contract was executed, Mrs. Borders had stored some of her bakery fixtures therein, and there was probably a truck load out of the bake shop in the back of the building at the time of the trial.

It is admitted that the appellant had not been declared a feme sole by the court for any purpose or had her disabilities of coverture removed.

The testimony is wholly insufficient to support the findings of the court that the fixtures and equipment of the bakery used by appellant and her deceased husband, John Grigsby, and by her up to the time of her remarriage, were more than necessary for the operation of the bakery by appellant and her husband, Richard B. Borders, and that it was the purpose of appellant in making the contract to procure the building for the purpose of protecting and preserving her separate property, consisting of the excess equipment unnecessary for the use of herself and Richard B. Borders, her second husband, in the operation of the bakery. In our opinion, the testimony disclosed by the record is insufficient to show that the lease contract sued on was made for the preservation and protection of the separate property of appellant, and hence did not authorize a personal judgment against her and the subjection of her separate property to the payment thereof. Williams v. Jameson (Tex. Civ. App.) 44 S.W.(2d) 498; Jesse H. Jones & Co. v. Black et al. (Tex. Civ. App.) 42 S.W.(2d) 151; Lee v. Hall Music Co., 119 Tex. 547, 35 S.W.(2d) 685; Cauble v. Beaver-Electra Refining Co., 115 Tex. 1, 274 S. W.

120; Red River National Bank v. Ferguson, 109 Tex. 287, 206 S. W. 923.

The record discloses that the testimony was not fully developed on the trial, and the judgment is reversed and the cause remanded.