**CURRIE v. MELTON et al.**

No. 1566.

Court of Civil Appeals of Texas. Eastland.

June 19, 1936.

Rehearing Denied Sept. 18, 1936.

S. H. Morrison, of Big Spring, for plaintiff in error.

G. B. Cunningham, of Big Spring, for defendant in error.

GRISSOM, Justice.

This is a suit by T. S. Currie against S. A. Melton and Cora Holmes on two promissory notes signed by said defendants payable to the order of A. L. Wasson and duly assigned to Currie. The cause was tried without a jury and judgment rendered in favor of Currie against Melton, but judgment against Cora Holmes was denied.

It is undisputed that Cora Holmes was a married woman at the time she signed the notes; that she was not joined by her husband in their execution; that Currie knew such facts when he bought the notes. Mr. Currie and Mrs. Holmes were the only witnesses. Mrs. Holmes testified that she signed the notes as surety for her married son, S. A. Melton. "The notes I signed were not my obligation; it was not intended at the time of my so signing that I was to receive any benefit and I did not receive any benefit." Mrs. Holmes further testified that at the time of her marriage to Mr. Holmes they each owned property and thereafter each managed his or her own property without interference from the other, just as they did before marriage; that there was no gathering or designating of any property as their community estate. "I cannot say that we had specific agreement to that effect, just a mental understanding and assent, and we maintained that system to the time of Mr. Holmes' decease." By his will Mr. Holmes bequeathed and devised all his property to his children. Mrs. Holmes made no claim upon his property either before or after his death. Mrs. Holmes testified: "In each instance, when I signed one of the notes I intended to bind myself individually, for the payment and out of my separate estate and funds." That Melton and Wasson owned some sheep and these notes were given in payment by Melton for Wasson's one-half interest in the sheep. "I signed them as surety for S. A.

Melton * * * I did not ask Mr. Holmes to sign the notes, for he had nothing to do with the transaction. * * *" She testified (concerning a note executed prior to the execution of those here sued upon) that she did not remember telling Mr. Currie, or any other officer of the bank, that "it was not necessary to ask Mr. Holmes to sign the note, that he had no concern about it; that we maintain our estates separately."

Mr. Currie, among other things, testified: "The bank authorities did not insist upon Mr. Holmes signing the original or any of the renewal notes, for I had talked with Mrs. and Mr. Holmes, and they told me it was not necessary; that they maintained their estates separately; that Mr. Holmes had nothing to do with, or interest in the transaction; that Mrs. Holmes was acting individually in the transaction. * * * I did not know what, if any interest, Mrs. Holmes acquired in the sheep, nor what, if any, benefit she was to receive, or did receive from any of the sheep transactions. We knew she had an estate; knew she was managing it, and the bank would not have accepted any of the notes without her signature. I knew about the purchasing of the sheep; the execution of notes for payments, and renewals of notes, for payments, or balance payments and payments by Mrs. Holmes. I knew Mrs. Holmes and her husband maintained separate bank accounts and that Mrs. Holmes drew checks against her separate account, when she made payments on the notes. I knew she had always made payments on the notes, when there was demand for payments, and I had understood she always met her obligations. Knowing about Mrs. Holmes' management of her separate estate; that she had drawn upon her separate funds and estate when making payment upon the sheep notes; maintained good record for meeting all her obligations, and the fact that she had never indicated that she would not pay the last two notes, I was led to believe it would be safe for me to buy them, and thus induced, I did, in good faith, buy them, and would not otherwise, have done so."

The court's findings of fact were in accord with the testimony of Mrs. Holmes and include the following: "I find that the notes herein sued upon were executed by Cora Holmes, as a surety upon said notes, and that they were not executed for the benefit of her separate estate or for the benefit of herself and children, and that the said Cora Holmes received no benefits whatsoever from the signing of said notes.

I find that the said S. A. Melton was her son by a former marriage and that he was married at the time of the execution of said notes. I further find that no action has ever been brought in the District Court, by the said Cora Holmes, or by anyone in her behalf, to remove her disabilities of coverture."

The court also found as a fact that Mrs. Holmes was married when she signed the notes.

The court concluded as a matter of law that Currie was entitled to judgment against Melton but not against Cora Holmes, "because at the time of the execution of the notes, she was a married woman and was not joined by her husband * * * as required by article 4623 * * * she being a surety on said notes," (and the notes) "not being executed for the benefit of her separate estate nor for necessaries for herself and children. * * *"

Article 4623 contains the following provision: "The wife shall never be the joint maker of a note or a surety on any bond or obligation of another without the joinder of her husband with her in making such contract."

■ The court's findings of fact are supported by the evidence. Since the court found that at the time of the execution of the note by Cora Holmes she was a married woman, that she was not joined by her husband, and that she signed the same as surety for S. A. Melton, we think said statute required the rendition of the judgment that was rendered by the trial court.

■ However, the plaintiff in error contends, in substance that article 4623 is not applicable, but that article 4614, R.S.1925 (as amended by Acts 1929, 41st Leg. p. 66, C. 32, § 1 [Vernon's Ann.Civ.St. art. 4614]), is applicable, and, since the wife by law has been given the sole management, control, and disposition of her separate property, under the peculiar facts of this case, where the wife continued to control her separate estate and to transact business in the same manner as a feme sole, that Mrs. Holmes was authorized by law to execute the notes in question and became liable for the payment of same. We think a holding in accordance with such contention would render nugatory the quoted provision of article 4623, and would permit the habit and custom of individuals to change the statutory law. The contention may find some apparent support under the decisions discussed in 23 Tex.Jur. § 171, pp. 204 & 205,

but it certainly cannot be sustained under the findings in this case which bring it definitely within the prohibition of article 4623. But, regardless of this, we think it is a complete answer to the contention to say that the trial court has found, not that the contract was entered into for the benefit of her separate estate, nor in the exercise of the power of management and control of her separate estate, but as surety for another. Jesse H. Jones & Co. v. Black et al. (Tex.Civ.App.) 42 S.W.(2d) 151; Aiken v. First Nat. Bank (Tex.Civ.App.) 198 S. W. 1017; First Nat. Bank v. Akin, 109 Tex. 297, 206 S.W. 928; Schenck v. Foster Building & Realty Co. (Tex.Civ.App.) 215 S.W. 877; Borders v. Moran (Tex.Civ. App.) 51 S.W.(2d) 434; Red River Nat. Bank v. Ferguson, 109 Tex. 287, 206 S.W. 923; Gamel v. City Nat. Bank (Tex.Com. App.) 258 S.W. 1043.

Plaintiff in error next contends that Mrs. Holmes should be held estopped to deny liability on the notes. The basis of such contention is that the plaintiff in error knew the custom of Cora Holmes and her husband in separately managing and controlling their respective estates, as hereinbefore stated, and knew that Mrs. Holmes was in the habit of contracting debts without the joinder of her husband and was in the habit of paying and discharging such debts and contracts, and that regardless of the law she was without actual restraint by her husband in the transaction of business, and that plaintiff in error, since she had theretofore met all such obligations and paid same out of her separate estate, was thereby induced to purchase said notes, and, he concludes, that Mrs. Holmes ought to be estopped from pleading coverture as a defense against payment of the notes.

■ As stated, it is undisputed that plaintiff in error, when he bought the notes, knew Mrs. Holmes was married at the time of their execution, and that she was not joined by her husband. She said and did nothing that misled plaintiff in error and concealed no material fact from him. So far as the record shows, she had no connection with the sale of these notes to Currie and made no representations to him at the time of the purchase, although it is contended by Currie that, at the time of the execution of other notes with which the notes in suit had some remote connection, Mrs. Holmes stated to him in substance that it was not necessary to have Mr. Holmes sign the notes, as he had no con-

nection with them or her business. Mrs. Holmes said she had no recollection of making such statements. The court did not find that she made them, and, if it were necessary to do so, it would be our duty to find in support of the judgment rendered that the court found such statements were not made. However, we believe such statements to be immaterial. We find nothing in this record that would justify our holding that she was estopped as a matter of law. Certainly the fact that Mrs. Holmes has heretofore paid her notes would constitute no ground for estoppel. Texas Southern Ry. Co. v. Harle (Tex.Civ.App.) 101 S.W. 878, 879; Citizens' Nat. Bank v. Sturgis Nat. Bank (Tex.Civ.App.) 81 S.W. 550; Sewell v. Walton (Tex.Civ.App.) 204 S.W. 371.

We have given each of the plaintiff in error's propositions careful consideration and believe they are without merit.

The judgment of the trial court is affirmed.